## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DESTINATION MATERNITY | ) | Case No. 19-12256 (BLS) |
| CORPORATION, *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MOTION FOR
## ENTRY OF AN ORDER (I) APPROVING
## THE BIDDING PROCEDURES, (II) SCHEDULING THE BID
## DEADLINES AND THE AUCTION, (III) APPROVING THE FORM AND
## MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion (this "Motion").[2]

### Relief Requested

1.     The Debtors seek entry of an order (the "Bidding Procedures Order"),

substantially in the form attached hereto: (a) authorizing and approving the proposed bidding

procedures attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures");

(b) establishing certain dates and deadlines, including the Bid Deadline and the date of the

Auction, if any, (c) scheduling a hearing (the "Sale Hearing") to consider approval of the

proposed Transaction(s); (d) authorizing and approving the form of (A) notice of the sale of the

Assets, the Bid Deadline, the Auction and the Sale Hearing, substantially in the form attached to

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Destination Maternity Corporation (5573); DM Urban Renewal, LLC (N/A); and Mothers Work Canada, Inc. (4780).  The location of the Debtors' principal place of business is 232 Strawbridge Drive, Moorestown, New Jersey 08057.

[2]     The Debtors also submit the *Declaration of Elise S. Frejka, CIPP/US in Support of the Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of the Notice Thereof, and (IV) Granting Related Relief* (the "**Frejka Declaration**") filed contemporaneously herewith in further support of the relief requested herein.

the Bidding Procedures Order as <u>Exhibit 2</u> (the "<u>Sale Notice</u>") and (B) notice to each relevant non-Debtor contract counterparty to the Potentially Assumed Contracts (as defined below) regarding the Debtors' potential assumption and assignment of such contract and the amount necessary to cure any defaults thereunder, substantially in the form attached to the Bidding Procedures Order as <u>Exhibit 3</u> (the "<u>Potential Assumption and Assignment Notice</u>"); (e) authorizing and approving procedures for the assumption and assignment of the Contracts and the determination of Cure Claims with respect thereto (collectively, the "<u>Assumption and Assignment Procedures</u>"); and (f) granting related relief.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012 (the "<u>Amended Standing Order</u>").  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Local Rules</u>"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 363, 365, and 1146(a), of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Bankruptcy Rules 2002(a)(2), 6004, 6006, and Bankruptcy Local Rules 2002-1, 6004-1, and 9006-1.

5.      On October 21, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Lisa Gavales, Chair of the Office of the CEO of Destination Maternity Corporation, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 17], filed on the Petition Date and incorporated by reference herein.

### The Bidding Procedures

6.      The Debtors believe that pursuing a comprehensive marketing process a sale transaction is the best opportunity to maximize value for the benefit of all their stakeholders.  As detailed in the First Day Declaration and the Augustine Declaration,[3] with the backing of its funded debtholders, the Debtors' investment bank, Greenhill & Co., LLC ("Greenhill"), launched a robust, but accelerated marketing process in early September that requested indications of interest by mid-October.  On September 2, 2019, Greenhill began outreach to more than 170 potential interested parties.  Of these parties, approximately 34 parties entered into confidentiality agreements with the Debtors and received a copy of the Debtors' confidential information memorandum ("CIM").  Following receipt of the CIM, several potential counterparties requested additional information and received access to a virtual data room and/or conducted in-person meetings with the Debtors' management or telephonic diligence meetings with Greenhill.  Five credible interested parties submitted non-binding bids prior to the Petition Date.[4]

---

[3]    The *Declaration of Neil A. Augustine in Support of the Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [Docket No. 35] filed on October 21, 2019.

[4]    Greenhill received an additional non-binding indication of interest that it does not view as credible.

7.      The Debtors commenced these chapter 11 cases, in part, to continue the marketing effort and seek to consummate a Transaction that will maximize value for all stakeholders and position the business for long-term success.    In connection with negotiations with their prepetition lenders regarding the consensual use of cash collateral, the Debtors and their lenders agreed to certain milestones (collectively, the "Milestones") related to the marketing process, including:

- **December 5, 2019**, as the deadline to receive one or more binding bids that satisfy the prepetition lenders' claims in full and are otherwise satisfactory to the prepetition lenders;

- **December 9, 2019**, as the deadline to hold an auction, if more than one "Qualified Bid" is received;

- **December 12, 2019**, as the deadline for entry of an order approving the sale transaction; and

- **December 31, 2019**, as the deadline to consummate a sale transaction.

8.      The Debtors seek to establish the Bidding Procedures to govern the completion of the marketing process in accordance with the timeline required under the Milestones—a timeline the Debtors believe is workable given their substantial prepetition marketing efforts, described above.    The Bidding Procedures facilitate an orderly, value-maximizing Auction, thereby optimizing recoveries for all parties in interest.    The Bidding Procedures provide for substantial flexibility with respect to the structure of any Transaction—*e.g.*, the sale of all or only some of the Debtors' assets—and allow the Debtors to select, in consultation with the Consultation Parties, one or more parties to serve as a stalking horse bidder (a "Stalking Horse Bidder") and provide Bid Protections thereto if the Debtors believe, in an exercise of their business judgement, and subject to Court approval, that doing so will maximize the value of their estates.    The Bidding Procedures also establish assumption procedures to facilitate the fair and orderly assumption and assignment of certain executory contracts in connection with any sale

transaction, and the cure of any defaults under such executory contracts pursuant to section 365 of the Bankruptcy Code.

## The Bidding Procedures Order

### I.    The Bidding Procedures.

9.    The Debtors have developed and proposed the Bidding Procedures, attached as Exhibit 1 to the Bidding Procedures Order, to govern the marketing process and Auction. The Debtors designed the Bidding Procedures permit a fair, efficient, and competitive process, consistent with the timeline of these cases, and to encourage all entities to expeditiously submit their best bids to maximize the value of the Debtors' estates. The following describes the salient points of the Bidding Procedures and discloses certain information required pursuant to Local Rule 6004-1.[5]

(a)    **Participation Requirements.**

(i)    To receive due diligence information, including access to the Debtors' electronic data room and to receive additional non-public information regarding the Debtors, a potential bidder must deliver to each of: (a) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher T. Greco, P.C., Rebecca Blake Chaikin, and Allyson Smith Weinhouse and (ii) Landis Rath & Cobb LLP, 919 North Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis, Kerri K. Mumford, and Jennifer L. Cree; and (b) financial advisors to the Debtors, Greenhill & Co., LLC, 300 Park Avenue, New York, New York, 10022, Attn: Neil Augustine, Peter Johns, and Taylor Sullivan (collectively, the "Debtors' Advisors"), the following documents (collectively, the "Preliminary Bid Documents"):

(A)    an executed Confidentiality Agreement on terms acceptable to the Debtors, to the extent not already executed; and

---

[5]    This summary is qualified in its entirety by the Bidding Procedures attached as Exhibit 1 to the Bidding Procedures Order. To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

(B)     evidence by the potential bidder of its sufficient financial capacity to close a proposed transaction, which may include financial statements of, or verified financial commitments obtained by, the potential bidder (or, if the potential bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (with the assistance of the Debtors' advisors) in consultation with the Consultation Parties.

(ii)     Only those potential bidders that have submitted acceptable Preliminary Bid Documents, as determined by the Debtors in consultation with their advisors and the Consultation Parties (defined below) (each, an "Acceptable Bidder"), may submit Bids.

(iii)     Beginning on or as soon as is reasonably practicable after the Debtors determine that a potential bidder is an Acceptable Bidder, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room for the benefit of all Acceptable Bidders.  All due diligence requests must be directed to Greenhill.  To the extent reasonably practicable, Greenhill will also facilitate meetings between any interested Acceptable Bidder and the Debtors' management team, which meetings will proceed in a manner determined by the Debtors, in their discretion.  The due diligence period will end on the Bid Deadline, as defined below, and, subsequent to the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information.

(iv)     The Debtors and their advisors will coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' business judgment, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate a Transaction. No potential bidder, Acceptable Bidder, or Qualified Bidder shall communicate with any of the Debtors' employees, landlords, vendors, or other potential bidder, Acceptable Bidder, or Qualified Bidder with respect to any Bid or Transaction absent the prior written consent of the Debtors; *provided* that if such consent is given a representative of the Debtors shall be present for or party to any such communications (unless otherwise agreed by the Debtors in their sole discretion).

(v)    For any Acceptable Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, redact, code, or to delay providing, any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Bidder at such time.

(vi)    Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Acceptable Bidder and its contemplated Transaction.

(b)    **Stalking Horse Bid Deadline and Bid Protections**.  Upon entry of the Bidding Procedures Order, the Debtors may, as an exercise of their business judgment and in consultation with the Consultation Parties select one or more Acceptable Bidders to act as a stalking horse bidder (a "Stalking Horse Bidder," and such bid, the "Stalking Horse Bid") in connection with the Auction.

In the event that the Debtors select one or more Stalking Horse Bidder(s) in accordance with the Bidding Procedures, the Debtors shall be fully authorized subject to the consent of the Prepetition Secured Parties, but not obligated, in an exercise of their business judgment (in consultation with the Committee) to offer bid protections to such Stalking Horse Bidder(s), subject to entry of the Bid Protections Approval Order, payable if the Debtors consummate a Transaction pursuant to a Qualified Bid other than the Stalking Horse Bid (if the Assets subject to such sale are those to which such Stalking Horse Bid relates) paid out of the proceeds of the sale to which they relate (the "Bid Protections").

Promptly upon the Debtors decision to offer Bid Protections to any Stalking Horse Bidder(s), the Debtors shall file a notice and serve such notice on the Notice Parties and request a hearing before the Court seeking approval of such Bid Protections (the "Bid Protections Approval Order"), which the Debtors may seek on an expedited basis pursuant to section 105(a) of the Bankruptcy Code and Local Rule 9006-1(e).  Parties in interest may object to the terms of any such Bid Protections (each, a "Bid Protections Objection").  In absence of a Bid Protection Objection, the Debtors will submit the Bid Protection Approval Order to the Court, which may enter such Order without a hearing.

(c)    **Bid Deadline.**  An Acceptable Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such proposal, solicitation, or offer via email (in pdf or similar format) so as to be **actually received** on or before **December 5, 2019, at 5:00 p.m.** (prevailing Eastern Time) (the "Bid Deadline").

(d) **Bid Requirements (Local Bankr. R. 6004-1(c)(i)(A), (B)).** Each Bid by
an Acceptable Bidder (a "<u>Bidder</u>") must be submitted in writing and
satisfy the following requirements (collectively, the "<u>Bid Requirements</u>"):

(i) <u>Purpose</u>: Each Acceptable Bidder must state that the Bid includes
an offer by the Acceptable Bidder to purchase some or all of the
Assets, and which Assets with reasonable specificity. Each
Acceptable Bid must clearly identify the following: (1) contracts to
be assumed, including cure amounts to be paid, if any, and parties
responsible for payment thereof; (2) leases of equipment or stores
to be assumed; and (3) which employees or groups thereof will be
offered employment.

(ii) <u>Purchase Price</u>: Each Bid must clearly set forth the terms of any
proposed Transaction, including and identifying separately any
cash and non-cash components of the proposed Transaction
consideration, including, for example, certain liabilities to be
assumed by the Acceptable Bidder (the "<u>Purchase Price</u>"). The
Debtors will consider all Acceptable Bids, but have a material
preference for all cash bids.

(iii) <u>Deposit</u>: Each Bid must be accompanied by a cash deposit in the
amount equal to 10% of the aggregate value of the cash and
non-cash consideration of the Bid to be held in an escrow account
to be identified and established by the Debtors (the "<u>Deposit</u>"),
*provided* that no Secured Creditor will be required to provide a
deposit with respect to the portion of any Bid that is a credit bid.[6]

(iv) <u>Marked Agreement</u>: Each Bid must include, at a minimum, a draft
asset purchase agreement, the form of which will be provided to
any Acceptable Bidder prior to the Bid Deadline (the "<u>Asset
Purchase Agreement</u>"), together with a redline version of the
revised Asset Purchase Agreement to the form, including the
exhibits and schedules related thereto and any related Transaction
documents or other material documents integral to such Bid,
pursuant to which the Acceptable Bidder proposes to effectuate the
Transaction (collectively, the "<u>Transaction Documents</u>").

(v) <u>Committed Financing</u>: To the extent that a Bid is not accompanied
by evidence of the Acceptable Bidder's capacity to consummate
the Transaction set forth in its Bid with cash on hand, each Bid
must include committed financing documented to the Debtors'

---

[6] A non-Debtor counterparty that is credit bidding for its own lease shall not be required to provide a deposit in
connection with its credit bid, *provided* that such counterparty otherwise complies with the Bid Procedures in
all other respects; *provided* further that any non-Debtor counterparty that is the Winning Bidder for its own
lease shall waive any request for cure in connection with such lease.

satisfaction, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors and reasonably acceptable to each of the Consultation Parties.

(vi)    Unconditional Offer / Contingencies.  A statement that the Bid is formal, binding, and unconditional and is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Winning Bid or a Back-Up Bid.

(vii)    Identity:  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder, including if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.   Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s), counsel and other advisors whom the Debtors' Advisors should contact regarding such Bid. Nothing herein shall preclude multiple Acceptable Bidders from submitting a joint Bid, subject to the Debtors' prior written consent (following consultation with the Consultation Parties) to such submission and the disclosure requirements set forth herein.

(viii)    Adequate Assurance:  Each Bid must contain evidence that the Acceptable Bidder has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) and 365(b)(3) of the Bankruptcy Code.   Such evidence may include audited and unaudited financial statements, tax returns, bank account statements, a description of the proposed business to be conducted at the premises and/or any other documentation that the Debtors further request.[7]

---

[7] This requirement shall not apply to an Acceptable Bidder who is a non-Debtor counterparty that is credit bidding for its own lease.

(ix)    <u>Authorization</u>:    Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

(x)    <u>As-Is, Where-Is</u>:    Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its Bid; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents.

(xi)    By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets as reflected in such Bid.**

(e)    <u>**Designation of Qualified Bidders.**</u>

(i)    A Bid will be considered a "<u>Qualified Bid</u>," and each Acceptable Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>," if the Debtors determine, in their business judgment, that such Bid:

(A)    satisfies the Bid Requirements set forth above;

(B)    is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Winning Bid (as defined below), within a time frame acceptable to the Debtors and in no event later than December 31, 2019.

(ii)    The Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder and shall provide the Notice Parties a copy of each Bid that has been submitted to the Debtors (whether or not such bid has been determined by the Debtors to be a Qualified Bid).

(iii)    If, following consultation with Consultation Parties, any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit on the date that is three business days after the Bid Deadline, or as soon as is reasonably practicable thereafter.  The Debtors reserve the right to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

(iv)    Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder.  Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

(v)    Notwithstanding anything herein to the contrary, the Debtors reserve the right, following consultation with the Consultation Parties, (a) to work with potential bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline or (b) to work with Qualified Bidders to aggregate two or more Qualified Bids into a single Qualifying Bid prior to the conclusion of the Auction.  No bidders, Acceptable Bidders, or Qualified Bidders may aggregate any Bids without the Debtors' prior consent (following consultation with the Consultation Parties).  Bids for different groups of Assets shall be subject to the Sub-Auction framework outlined below.

(f)    **Right to Credit Bid.**

(i)    Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of such Secured Creditor's allowed claims pursuant to section 363(k) of the Bankruptcy Code; provided that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; provided that a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any Assets included in

such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment). For the avoidance of doubt, a Secured Creditor shall be required to provide cash consideration in respect of any Assets to be acquired but that do not constitute collateral securing such Secured Creditor's claim(s).

(ii)    Pursuant to that certain "*Interim Order (I) Authorizing Use Of Cash Collateral And Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling A Final Hearing; And (IV) Granting Related Relief*", entered October 22, 2019 (the "Interim Cash Collateral Order"), the Debtors have stipulated to the amount, nature, extent, validity and perfection of the secured claims of (a) Wells Fargo Bank, National Association ("Wells Fargo") and (b) Pathlight Capital LLC ("Pathlight", and together with Wells Fargo the "Prepetition Secured Parties"), and each therefore has the right under section 363(k) of the Bankruptcy Code to credit bid the full dollar amount of all Obligations (as defined in each of the ABL Credit Agreement and Term Loan Credit Agreement) (including any adequate protection) then outstanding.

(iii)   With respect to a Bid for its own lease, a non-Debtor lease counterparty may credit bid only an amount equal to the cure amount for such lease that is mutually acceptable to the Debtors (in consultation with the Consultation Parties) and such lease counterparty or such other amount as may be determined by the Court. The lease counterparty shall receive a dollar-for-dollar credit in the amount of its credit bid when such lease counterparty bids for its own lease.

(g)    **The Auction (Local Bankr. R. 6004-1(c)(ii)).**

(i)    If the Debtors receive only one Qualified Bid prior to the Bid Deadline, the Debtors reserve the right, following consultation with the Consultation Parties, to designate such Bid as the Winning Bid. If the Debtors receive two or more Qualified Bids prior to the Bid Deadline, the Debtors will conduct the Auction to determine the Winning Bidder with respect to all or substantially all of the Debtors' Assets. The Auction shall take place no later than December 9, 2019 at 9:00 a.m. (prevailing Eastern Time), at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later date and time as selected by the Debtors.

(ii)   No later than the day before the Auction, at 5:00 p.m. (prevailing Eastern Time), the Debtors will notify all Qualified Bidders of the

highest or otherwise best Qualified Bid, or, if multiple bids are received in respect of non-overlapping Assets, the highest or best Qualified Bid(s) received in relation to each group of Assets, in each case as determined in the Debtors' business judgment (each such bid, a "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid(s) to all Qualified Bidders and the Consultation Parties.  The determination of which Qualified Bid(s) constitutes the Baseline Bid(s) and which Qualified Bid(s) constitutes the Winning Bid(s) shall take into account any factors the Debtors and Prepetition Secured Parties reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Baseline Bid(s); (e) the tax consequences of such Qualified Bid; (f) the assumption of obligations, including contracts and leases; (g) the cure amounts to be paid; and (h) the impact on employees, including the number of employees proposed to be transferred and employee-related obligations to be assumed    (collectively, the "Bid Assessment Criteria").

(iii)    The Auction shall be conducted in a timely fashion according to the following procedures:

(A)    The Debtors Shall Conduct the Auction:

- The Debtors and their professionals shall direct and preside over the Auction.   At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid(s).    All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders and the Consultation Parties.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, the Winning Bid(s), and any Backup Bid(s).

- If one or more Qualified Bid(s) exist for acquiring specific sub-groups of the Debtors' Assets, then the Debtors shall first conduct a Sub-Auction for each of these businesses or Assets that has at least one

Qualified Bid pursuant to the Bid Procedures. The Debtors may, in the exercise of their reasonable business judgment, following consultation with the Consultation Parties, identify the highest or otherwise best Qualified Bid as the reserve bid for each Sub-Auction (each, a "<u>Reserve Sub-Auction Bid</u>" and the bidder submitting such bid, a "<u>Reserve Sub-Auction Bidder</u>"). The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid in each Sub-Auction, following consultation with the Consultation Parties, as a back-up bid (each, a "<u>Back-Up Sub-Auction Bid</u>" and the bidder submitting such bid, a "<u>Back-Up Sub-Auction Bidder</u>"). After the designation of any Reserve Sub-Auction Bid, the Debtors shall conduct an Auction for the Debtors' Assets on a consolidated basis pursuant to the Auction Rules.

- If no Qualified Bid exists for acquiring specific sub-groups of the Debtors' Assets, the Debtors shall conduct an Auction for the Debtors' business on a consolidated basis pursuant to the Auction Rules.

- To the extent the Debtors conduct multiple auctions for different subgroupings of the Debtors' Assets/businesses (each, a "<u>Sub-Auction</u>") at any Sub-Auction, if a Qualified Bidder declines to participate in any specific Sub-Auction or Sub-Auctions, or any round of bidding for such specific Sub-Auctions, such Qualified Bidder shall still be permitted to offer a Bid in subsequent Sub-Auctions, including bids that include Assets/businesses subject to a prior Sub-Auction, which includes the right to bid on groupings of Assets/businesses that may include specific Assets/businesses which were the subject of an earlier Sub-Auction.

- Only (i) Qualified Bidders, (ii) the Consultation Parties, and (iii) the members of the Committee, and with respect to (i) through (iii), each of their respective legal and financial advisors shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly

authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction.

(B)    Terms of Overbids (Local Bankr. R. 6004-1(c)(i)(C)): "Overbid" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

- Minimum Initial Overbid. Any Overbid following the Baseline Bid shall be no less than the value of the Bid Protections, if any, plus a value equal to $500,000, as determined by the Debtors in an exercise of their business judgment.

- Minimum Overbid Increment. Any Overbid to a Prevailing Highest Bid (as defined below) shall be in increments of no less than a value equal to $500,000, as determined by the Debtors in an exercise of their business judgment.

- Conclusion of Each Overbid Round. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, and with the consent of the Prepetition Secured Parties, extend from time to time, the "Overbid Round Deadline") by which time any Overbids must be submitted to the Debtors and the Consultation Parties.

- Overbid Alterations. An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

- No Round-Skipping. Round-skipping, as described herein, is explicitly prohibited. To remain eligible to participate in the Auction or specific a Sub-Auction for a particular Asset or business, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii)

to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment, following consultation with the Consultation Parties, such Qualified Bidder shall be disqualified from continuing to participate in the Auction for such Asset or business; *provided*, that with the consent of the Consultation Parties, the Debtors may adopt and utilize Auction procedures other than the foregoing procedure for any round of bidding.

- <u>Announcing Highest Bid.</u>  With respect to any Auction or Sub-Auction, the Debtors shall, subsequent to each Overbid Round Deadline, announce whether the Debtors in consultation with the Consultation Parties have identified, (a) in the initial Overbid round, an Overbid as being higher or otherwise better than the Baseline Bid in respect of the Assets that are the subject of the Auction or Sub-Auction, or, (b) in subsequent rounds, an Overbid as being higher or otherwise better than the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

(C)     The Debtors reserve the right, in their business judgment to adjourn the Auction or Sub-Auction one or more times with the consent of the Prepetition Secured Parties, to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to

consummate the proposed Transaction at the prevailing Overbid amount.

(D) <u>Closing the Auction</u>: The Auction or Sub-Auctions shall continue until there is only one Qualified Bid that the Debtors determine, in their business judgment following consultation with the Consulting Parties, to be the highest or otherwise best Qualified Bid for the Assets, in the case of an Auction, or the specific Assets or business that are the subject of a specific Sub-Auction. Such Qualified Bid shall be declared the "<u>Winning Bid</u>," and such Qualified Bidder, the "<u>Winning Bidder</u>," at which point the Auction or Sub-Auction will be closed. The Auction or Sub-Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction or Sub-Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of such Winning Bid is conditioned upon approval by the Court of such Winning Bid. If, upon the completion of an Auction, the Debtors, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, based on the evaluation metrics provided herein, following consultation with the Consulting Parties, determine that pursuing a Transaction pursuant to the Reserve Sub-Auctions Bid(s) will result in a higher or otherwise better value of the Debtors' businesses than pursuing a Transaction pursuant to the highest or otherwise best Bid received in the Auction of the Debtors' businesses or Assets on a consolidated basis, then the Debtors may, in the exercise of their reasonable business judgment, declare the Reserve Sub-Auction Bid(s) as Winning Bid(s) (and the Reserve Sub-Auction Bidder(s) as Winning Bidders) and the Back-Up Sub-Auction Bid(s) as the Back-Up Bid(s) (and the Back-up Sub-Auction Bidder(s) as Back-Up Bidder(s)). For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law. As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid, and, as applicable, cause such definitive documentation to be filed with the Court.

(E) <u>No Collusion; Good-Faith *Bona Fide* Offer</u>: Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the

bidding, and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Winning Bidder.

(h)    **Backup Bidder (Local Bankr. R. 6004-1(c)(i)(E)).**

(i)    Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction or Sub-Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction or any Sub-Auction for the Assets or any sub-group thereof, as determined by the Debtors in the exercise of their business judgment, shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>") with respect to the Assets or the specified sub-group thereof that was the subject of the specific Sub-Auction until such time that the Transaction is consummated, and each Qualified Bidder shall agree and be deemed to agree to be a Backup Bidder if so designated by the Debtors.

(ii)    The identity of a Backup Bidder and the amount and material terms of the Qualified Bid of such Backup Bidder shall be announced by the Debtors, at the conclusion of the Auction or relevant Sub-Auction at the same time the Debtors announce the identity of the Winning Bidder related thereto.  Such Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time that the Transaction is consummated.  Each Backup Bidder's Deposit shall be held in escrow consummation of the Approved Transaction.

(iii)    If a Winning Bidder fails to consummate the Approved Transactions contemplated by its Winning Bid, the Debtors may select the Backup Bidder with respect to the Assets or relevant sub-group of the Debtors' Assets or business as the Winning Bidder, and such Backup Bidder shall be deemed a Winning Bidder for all purposes.  The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party.  In such case, the defaulting Winning Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Winning Bidder, including with respect to specific performance.

(i)    **Notice and Consultation Parties.**

(i)    Information that is provided to the "Notice Parties" under these Bidding Procedures must be provided to the following parties: (a)

counsel to Wells Fargo, as administrative agent and lender under the Debtors' prepetition revolving credit facility and lender under the Debtors' prepetition term loan facility, Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Daniel F. Fiorillo, and Chad B. Simon; (b) counsel to Pathlight, as administrative agent and lender under the Debtors' prepetition term loan facility, Reimer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York 10036, Attn: Steven E. Fox; (c) counsel to the Official Committee of Unsecured Creditors (the "Committee"), [●], Attn: [●]; and (e) the Office of the U.S. Trustee for the District of Delaware.

(ii)    The term "Consultation Parties" shall mean: (a) Wells Fargo; (b) Pathlight; and (c) the Committee, in each case, only to the extent that such party is not a Qualified Bidder with respect to the Auction or Sub-Auction in question.

(j)    **Reservation of Rights (Local Bankr. R. 6004-1(c)(i)(D))**.  The Debtors reserve their rights to modify these Bidding Procedures, with the consent of the Prepetition Secured Parties, in their business judgment in any manner that will best promote the goals of these Bidding Procedures or impose at or prior to the Auction, additional customary terms and conditions on a Transaction, including, without limitation:  (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

(k)    **Confirmation Hearing.**   A hearing to consider approval of the sale transaction (the "Sale Hearing"), pursuant to which the Debtors and the Winning Bidder will consummate the Transaction (the "Approved Transaction"), will be held no later than December 12, 2019 and otherwise in accordance with any scheduling order entered by the Court.   The Approved Transaction shall be consummated by December 31, 2019 or such later date as to which the Debtors, the Winning Bidder, and the Prepetition Secured Parties, agree.  **The Sale Hearing may be continued to a later date by the Debtors by sending notice prior to, or making an announcement at, the Sale Hearing; provided that the Prepetition Secured Parties consent to such later date.  No further notice of any such continuance will be required to be provided to any party.**

(l)    Any objections to the sale transaction must be received by December 6, 2019, at 4:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline").

10.    Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value and, as such, do not impair the Debtors' ability to consider all qualified bid proposals and, as noted, preserve the Debtors' right to modify the Bidding Procedures, consistent with the terms of the Bidding Procedures, as necessary or appropriate to maximize value for the Debtors' estates.

## II.    Form and Manner of Notice.

11.    The Auction, if any, shall take place no later than 9:00 a.m. (prevailing Eastern Time) on December 9, 2019, at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.  On November 15, 2019, the Debtors will post the Sale Notice on their restructuring website, https://cases.primeclerk.com/DestinationMaternity/, and serve the Sale Notice on the parties that receive notice of this Motion, as set forth below.  The Debtors submit that such notice constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  The Debtors propose that no other or further notice of the Auction shall be required.  Accordingly, the Debtors request that this Court approve the form and manner of the Sale Notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 2.

## III.    Assumption and Assignment Procedures

In connection with the Transaction(s), the Debtors anticipate that they will assume and assign to the Winning Bidder (or its designated assignee(s)) all or certain of the Potentially Assumed Contracts (as defined below) pursuant to section 365(b) of the Bankruptcy Code. Accordingly, the Debtors hereby seek approval of the proposed Assumption and Assignment Procedures set forth herein, which, among other things, (a) outline the process by which the Debtors will serve notice to all non-Debtor counterparties to Potentially Assumed Contracts

(each, a "<u>Potential Assumption Counterparty</u>") regarding the potential assumption and assignment, the amount necessary to cure any defaults thereunder (the "<u>Cure Claims</u>"), if any, and information regarding the Winning Bidder's adequate assurance of future performance and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to assumption and assignment of the Potentially Assumed Contracts (as defined herein). The proposed Assumption and Assignment Procedures are as follows:

    a.    **<u>Executory Contract List.</u>**

        i.    No later than November 19, 2019, the Debtors shall file with the Court a list of executory contracts and unexpired leases that may be assumed and assigned in connection with the Transaction(s) (such contracts, the "<u>Potentially Assumed Contracts</u>" and such list the "<u>Executory Contract List</u>").

        ii.    If it is discovered that an Executory Contract should have been included on the Executory Contract List but was not (such contract, a "<u>Previously Omitted Contract</u>"), or in the event that the Debtors seek to modify a Cure Claim, the Debtors will promptly file with the Court a revised Executory Contract List.

    b.    **<u>Potential Assumption and Assignment Notice</u>**. Simultaneously with the filing of the Executory Contract List (or any revised Executory Contract List) or as soon as reasonably practicable thereafter, serve on each relevant Potential Assumption Counterparty the Potential Assumption and Assignment Notice attached to the Bidding Procedures Order as **Exhibit 3**.

    c.    **<u>Assumption and Assignment Objections</u>**.

        i.    <u>Objection Deadlines</u>. Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of an Assumed Contract  or adequate assurance of any Stalking Horse Bidder's future ability to perform (an "<u>Assumption and Assignment Objection</u>"), must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, (d) be filed with the Clerk of the Bankruptcy Court, 824 N. Market St., Wilmington, Delaware 19801, by no later than **December 6, 2019, at 4:00 p.m.** (prevailing Eastern Time), and (e) be served on that same date on (i) proposed counsel for the Debtors, (y) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New

York 10022, Attn: Christopher T. Greco, Rebecca Blake Chaikin, and Allyson Smith Weinhouse and (z) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis and Kerri K. Mumford, (2) counsel to any statutory committee appointed in the Chapter 11 Cases, (3) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Timothy J. Fox, (4) co-counsel to Wells Fargo Bank, National Association, (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq. and (z) Richards, Layton & Finger, PA, One Rodney Square, 920 King Street, Wilmington, DE 19801, Attn: John Knight, Esq., (5) co-counsel for Pathlight Capital LLC, (y) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn: Steven E. Fox, Esq. and (z) Ashby & Geddes, P.A., 500 Delaware Avenue, Wilmington, DE 19899, Attn: Gregory A. Taylor, Esq., and (6) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").

Objections of any Potential Assumption Counterparty related solely to the adequate assurance of future performance provided by the Winning Bidder, if the Winning Bidder is not the Stalking Horse Bidder (any such objection, also an Adequate Assurance Objection), must be made no later than **December 11, 2019, at 5:00 p.m.** (prevailing Eastern Time) (the "Adequate Assurance Objection Deadline").[8]

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **December 6, 2019, at 4 p.m.** (prevailing Eastern Time) and (d) be served on the Objection Notice Parties.

ii.    Failure to File Timely Assumption and Assignment Objection. If a Potential Assumption Counterparty fails to properly and timely file and serve an Assumption and Assignment Objection in accordance with these Assumption Procedures, the Potential Assumption Counterparty shall be forever barred from asserting any objection with regard to the assumption or assignment of its Assumed Contract, and notwithstanding anything to the contrary in the Assumed Contract or any other document, the Cure Claims set forth in the Potential Assumption and Assignment Notice shall be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract under section 365(b) of the

---

[8]    If the Stalking Horse Bidder is the Winning Bidder, objections to adequate assurance must be filed by the Sale Objection Deadline.

Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Transaction, whether known or unknown, due or to become due, accrued, absolute, contingent or otherwise, and the Potential Assumption Counterparty shall be forever barred from asserting any additional cure or other amounts with respect to such Assumed Contract against the Debtors, the Winning Bidder or the property of any of them.

d.    **Cure Objections**.  Objections to Cure Claims must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Claim that the Potential Assumption Counterparty believes is required to cure defaults under the relevant Assumed Contract, and (d) be filed with the Clerk of the Bankruptcy Court, 824 N. Market St., Wilmington, Delaware 19801, by no later than **December 3, 2019, at 4:00 p.m.** (prevailing Eastern Time), and (e) served on the Objection Notice Parties.

e.    **Reservation of Rights**.  The inclusion of a Potentially Assumed Contract, or Cure Claims with respect thereto, on a Potential Assumption and Assignment Notice or the Executory Contract List shall not constitute or be deemed a determination or admission by the Debtors, the Winning Bidder(s) or any other party in interest that such contract or lease is an executory contract or unexpired lease within the meaning of the Bankruptcy Code.  The Debtors reserve all of their rights, claims and causes of action with respect to each Potentially Assumed Contract listed on the Potential Assumption and Assignment Notice and Executory Contract List.  The Debtors' inclusion of any Potentially Assumed Contract on the Potential Assumption and Assignment Notice and Executory Contract List shall not be a guarantee that such Assumed Contract ultimately will be assumed or assumed and assigned.

## Basis for Relief

**I.    The Relief Sought in the Bidding Procedures Order Is in the Best Interests of the Debtors' Estates and Should Be Approved.**

12.    Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.  *See, e.g.*, *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [Debtor] to show that a sound business purpose justifies such actions.' If the [Debtor's] decision evidences a sound business

purpose, then the Bankruptcy Court should approve the sale." (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'" (internal citations omitted)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (quoting *In re Schipper*); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656–7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

13.    The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See In re Adams Res. Expl. Corp.*, No. 17-10866 (KG), at 12 (Bankr. D. Del. 2017) ("The relief requested in the Sale Motion….is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate, and its creditors."); *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (internal citations omitted).

14.    To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g.*, *In re Dura Auto. Sys.*, 379 B.R. 257, 263 (Bankr. D. Del. 2007); *Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

15.    The Debtors believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offers available for the Assets.  The proposed Bidding Procedures will allow the Debtors to conduct the sale process in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best package for the Assets and who can demonstrate the ability to close a transaction.  Specifically, the Bidding Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

16.    Additionally, as noted above, pursuant to the *Interim Order (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* (the "Interim Cash Collateral Order") [Docket No. 77], the Debtors' must achieve certain milestones:

- Court approval of the Bidding Procedures Order by November 14, 2019;
- Bid Deadline by December 5, 2019;

- Auction by December 9, 2019;
- the Sale Hearing by December 12, 2019; and
- payment of all obligations owed to the Prepetition Secured Parties December 31, 2019.

These milestones were heavily negotiated between the Debtors and Wells Fargo Bank, N.A., as administrative agent and lender under the Debtors' prepetition revolving credit facility and lender under the Debtors' prepetition term loan facility, and Pathlight Capital LLC, as administrative agent and lender under the Debtors' prepetition term loan facility (collectively, the "Prepetition Secured Parties") at arm's length. Failure to satisfy the milestones would give rise to termination rights, which permit the Prepetition Secured Parties to exercise remedies that would debilitate and imperil the Debtors' efforts to reorganize—possibly leading to a liquidation. The failure to approve the Bidding Procedures will therefore imperil the Debtors' prospects of a successful value-maximizing Transaction, whereas approval of the Bidding Procedures would maximize the estate's value.

17.    The Debtors submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings in bankruptcy proceedings, and are consistent with other procedures previously approved by this District and others, including precedent authorizing debtors to choose a stalking horse bidder after approval of bid procedures where (a) a stalking horse is not readily available and (b) any such later determination to enter into a stalking horse agreement is only made upon consultation, or with the consent of, a creditors' committee. *See e.g., In re Barneys New York, Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y. Aug. 6, 2019); *In re Z Gallerie, LLC*, No. 19-10488 (KBO) (Bankr. D. Del. Mar. 11, 2019); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 21, 2019); *In re Argos Therapeutics Inc.*, No. 18-12174 (KJC) (Bankr. D. Del. Dec. 20, 2018); *In re Bertucci's Holdings Inc.*, No. 18-10894 (MFW) (Bankr. D. Del. May 7, 2018); *In re*

*GAL Liquidating Corp.*, No. 17-12100 (LSS) (Bankr. D. Del. Nov. 15, 2017); *In re TerreStar Networks, Inc.*, No. 10-15446 (SHL) (Bankr. S.D.N.Y. Feb. 16, 2011).[9]

## II.    Assumption and Assignment of Executory Contracts and Unexpired Leases Should Be Authorized.

18.    Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).    Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease. *See, e.g., In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court"); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that a debtor's decision to assume or reject executory contract is governed by business judgment standard and may only be overturned if decision is product of bad faith, whim, or caprice).    The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

19.    Any assumption of executory contracts is an exercise of the Debtors' sound business judgment because the transfer of such contracts is necessary to the Debtors' ability to obtain the best value for their Assets.    The assumption and assignment of executory contracts will be a critical component of the value of any Bid.    Given that consummation of a Transaction is critical to the Debtors' efforts to maximize value for their estates and stakeholders, the

---

[9]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

Debtors' assumption of executory contracts is an exercise of sound business judgment and, therefore, should be approved.

20.    The consummation of any Transaction involving the assignment of an executory contract will be contingent upon the Debtors' compliance with the applicable requirements of section 365 of the Bankruptcy Code.  Section 365(b)(1) of the Bankruptcy Code requires that any outstanding defaults under the contracts to be assumed be cured or that the Debtors provide adequate assurance that such defaults will be promptly cured.  The Debtors' assumption and assignment of executory contracts will be contingent upon payment of the Cure Claims and effective only upon the closing of an applicable Transaction.  The Debtors propose to file with the Court and serve on each Potential Assumption Counterparty a Potential Assumption and Assignment Notice, which will set forth the Debtors' good faith calculations of Cure Claims, if any, with respect to each contract listed.  Potential Assumption Counterparties will have a meaningful opportunity to raise any objections to the proposed assumption of their respective contracts prior to closing of the Transaction(s).

21.    The Debtors submit that the service of the Potential Assumption and Assignment Notice upon each Potential Assumption Counterparty constitutes good and adequate notice of the potential assumption of such counterparty's Potentially Assumed Contract, proposed cure amount, and procedures for objecting thereto, in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the Potential Assumption and Assignment Notice, substantially in the form attached to the Bidding Procedures Order as Exhibit 3.

22.     Pursuant to section 365(f)(2) of the Bankruptcy Code, a debtor may assign an executory contract if "adequate assurance of future performance by the assignee of such contract or lease is provided." The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (citation omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean an absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) (finding that, "[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance."). Among other things, adequate assurance may be provided by evidencing the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when the prospective assignee of a lease has financial resources and has expressed willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

23.     As set forth above and in the Bidding Procedures, for a bid to qualify as a Qualified Bid, a Potential Bidder must include with its bid information regarding its ability (and the ability of its designated assignee, if applicable) to perform under any contracts proposed to be assumed. Each affected Contract Counterparty will have an opportunity to object to the ability of the Winning Bidder to provide adequate assurance as provided in the Bidding Procedures Order. To the extent necessary, the Debtors will present facts at the Sale Hearing or any subsequent hearing to hear any objections in connection with any proposed assumption and

assignment by the Debtors to show the financial wherewithal, willingness and ability of the Winning Bidder to perform under the assigned contracts.

24.     In addition, to facilitate the assumption and assignment of executory contracts, the Debtors further request that the Court find that all anti-assignment provisions contained therein, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of any executory contract, to be unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.[10]

**III.     The Form and Manner of the Sale Notice Should Be Approved.**

25.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to the relief requested herein.   The Debtors submit that the posting of the Sale Notice on their restructuring website and publishing the Sale Notice in the New York Times in substantially the same form as attached to the Bid Procedures Order as <u>Exhibit 2</u> constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.   Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the Sale Notice, substantially in the form attached to the Bidding Procedures Order as <u>Exhibit 2</u>.

---

[10]  Section 365(f)(1) of the Bankruptcy Code provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease . . . ." 11 U.S.C. § 365(f)(1). Section 365(f)(3) of the Bankruptcy Code further provides that "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3)

#### IV.     The Sale of Personally Identifiable Information Should be Allowed Without Appointment of a Consumer Privacy Ombudsman.

26.     Section 101(41A) of the Bankruptcy Code defines "personally identifiable information" ("PII") as an individual's name, residence address, email address, telephone number, social security number, or credit card number, as well as an individual's birth date or other information that, if associated with the information described previously, would permit the identification or contacting of the individual. 11 U.S.C. § 101(41A). Section 332 of the Bankruptcy Code requires the appointment of a consumer privacy ombudsman (an "Ombudsman") when a debtor seeks to sell or transfer PII notwithstanding restrictions in the debtor's privacy policy with respect to the transfer of such PII. *See* 11 U.S.C. § 363(b)(1)(A).

27.     As set forth in the Frejka Declaration,[11] the Debtors' privacy policy—available on the company's website—in effect on the Petition Date provides for the sale of PII:

> If all or part of our business, assets, Stores or Sites are merged with or sold to another company, or as part of a bankruptcy proceeding, your personal information will be transferred to the surviving or acquiring company.[12]

As set forth in the Frejka Declaration, consumers affirmatively consented to the transfer of their PII as part of a sale when they (a) subscribed to receive communications from the Debtors, (b) registered for the PERKS Savings Program, (c) entered a sweepstakes or other promotion, or (d) created an account with the Debtors. Moreover, the prior versions of the Debtors' privacy policies similarly permitted the sale of PII to third-parties.[13] Accordingly, the Debtors submit

---

[11]   *See* Frejka Decl. ¶¶ 6–9.

[12]   *See* https://www.destinationmaternity.com/privacy-policy.html.

[13]   *See* Frejka Decl. ¶¶ 6–9.

that a sale of PII is consistent with the Debtors' privacy policy and the appointment of an Ombudsman is not required.[14]

### **Reservation of Rights**

28.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

### **Notice**

29.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the

---

[14]    *Id.* at ¶¶ 12–13.

Bankruptcy Local Rules, and is sufficient under the circumstances. Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier or hand delivery, to parties-in-interest, including: (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wells Fargo Bank, N.A., as administrative agent and lender under the Debtors' prepetition revolving credit facility and lender under the Debtors' prepetition term loan facility or, in lieu thereof, counsel thereto; (d) Pathlight Capital LLC, as administrative agent and lender under the Debtors' prepetition term loan facility or, in lieu thereof, thereto; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

22.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Bidding Procedures Order, substantially in the form attached hereto, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: October 25, 2019
Wilmington, Delaware

**LANDIS RATH & COBB LLP**
Adam G. Landis (DE Bar No. 3407)
Kerri K. Mumford (DE Bar No. 4186)
Jennifer L. Cree (DE Bar No. 5919)
919 North Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:    (302) 467-4400
Facsimile:     (302) 467-4450
Email:          landis@lrclaw.com
                    mumford@lrclaw.com
                    cree@lrclaw.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:          christopher.greco@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*