## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DESTINATION MATERNITY | ) | Case No. 19-12256 (BLS) |
| CORPORATION, *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 106** |

### ORDER (I) APPROVING THE BIDDING PROCEDURES, (II) SCHEDULING THE BID DEADLINES AND THE AUCTION, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (the "<u>Debtors</u>") for the entry of an order (this "<u>Order</u>"): (a) authorizing and approving the proposed bidding procedures attached hereto as **Exhibit 1** (the "<u>Bidding Procedures</u>"); (b) establishing certain dates and deadlines, including the Bid Deadline and the Auction Date, if any, (c) scheduling a hearing (the "<u>Sale Hearing</u>") to consider approval of the proposed Sale; (d) authorizing and approving the form of (A) notice of the sale of the Assets, the Bid Deadline, the Auction and the Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "<u>Sale Notice</u>") and (B) notice to each relevant non-Debtor Potential Assumption Counterparty to the Potentially Assumed Contracts regarding the Debtors' potential assumption and assignment of such contract and the amount necessary to cure any defaults thereunder, substantially in the form attached hereto **Exhibit 3** (the "<u>Potential Assumption and Assignment</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Destination Maternity Corporation (5573); DM Urban Renewal, LLC (N/A); and Mothers Work Canada, Inc. (4780). The location of the Debtors' principal place of business is 232 Strawbridge Drive, Moorestown, New Jersey 08057.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures or the Motion.

Notice"); (e) authorizing and approving procedures for the assumption and assignment of the Contracts and the determination of Cure Claims with respect thereto (collectively, the "Assumption and Assignment Procedures"); and (f) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration and the Frejka Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

**THE COURT HEREBY FINDS THAT:**

      A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings

of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Good and sufficient notice of the Motion, the Bidding Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

C.      The bases for the relief requested in the Motion are sections 105, 363, 365, and 1146(a) of the Bankruptcy Code, 11 U.S.C.§§ 101–1532 (the "Bankruptcy Code"), Rules 2002(a)(2), 6004, 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Bankruptcy Local Rules 2002-1, 6004-1, and 9006-1.

D.      The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures; and (ii) schedule the Auction and approve the manner of notice of the Auction.

E.      The Bidding Procedures were negotiated by the parties at arms' length and in good faith.

F.      The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable and appropriate, are designed to maximize creditor recoveries from a sale of the Assets and permit the Debtors to comply with their obligations under the Interim Cash Collateral Order and Final Cash Collateral Order (as each is defined in the Cash Collateral Motion) and are consistent with the Debtors' exercise of their respective fiduciary duties under applicable law.

G.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and thereby: (i) approve of the Bidding Procedures, (ii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines set forth in the

Bidding Procedures, (iii) approve the Noticing Procedures and the forms of notice, and (iv) approve the Assumption and Assignment Procedures and the forms of relevant notice. Such compelling and sound business justification, which was set forth in the Motion, the First Day Declaration, the Frejka Declaration, and on the record at the Bidding Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

> H.    The Bid Protections are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders.

> I.    The legal and factual bases set forth in the Bidding Procedures Motion establish just cause for the relief granted herein. Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

> J.    The Bidding Procedures comply with the requirements of Local Rule 6004-(1)(c).

> K.    The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as **Exhibit 2** and the Potential Assumption and Assignment Notice attached hereto as **Exhibit 3**) are reasonably calculated to provide each Potential Assumption Counterparty to the Potentially Assumed Contracts with proper notice of the potential assumption and assignment of such Contracts by the Winning Bidder(s) or any of their known proposed assignees (if different from the Winning Bidder) and the requirement that each such Potential Assumption Counterparty assert any objection to the proposed Cure Claims prior to the Assumption and Assignment Objection Deadline or otherwise be barred from asserting claims arising from events occurring following assumption and assignment of such Contracts.

**IT IS HEREBY ORDERED THAT:**

> 1.    The Motion is granted as provided herein.

2.    All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

## I.    Important Dates and Deadlines.

3.    **Bid Deadline**. **December 5, 2019, at 5:00 p.m.** (prevailing Eastern Time), is the deadline by which bids for the Assets (as well as the deposit and all other documentation required under the Bidding Procedures for Qualified Bidders) must be submitted in accordance with the terms of the Bidding Procedures.

4.    **Auction**. No later than **December 9, 2019, at 9:00 a.m.** (prevailing Eastern Time), an Auction, if any, will be held at the offices of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022 (the "Auction"). The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than one business day before such Auction, and will post notice of the date, time, and place of the Auction no later than one business day before such Auction on the website of the Debtors' notice and claims agent, https://cases.primeclerk.com/DestinationMaternity/.

5.    **Sale Objections**. Objections to the Sale must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **December 6, 2019, at 4:00 p.m.** (prevailing Eastern Time) and (d) be served on: (1) proposed counsel for the Debtors, (y) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher T. Greco, Rebecca Blake Chaikin, and Allyson Smith Weinhouse and (z) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis and Kerri K. Mumford, (2) proposed counsel to the Official Committee of Unsecured Creditors (y) Cooley LLP, 55 Hudson Yards, New York, NY 10001-2157, Attn: Seth Van Aalten, Cathy Herschopf and Michael Klein and (z) Cole Schotz P.C., 500 Delaware Ave,

Suite 1410, Wilmington, DE 19801, Attn: David Dean, (3) the U.S. Trustee, 844 King Street,

Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Timothy J. Fox, (4) co-counsel to

Wells Fargo Bank, National Association, (x) Otterbourg P.C., 230 Park Avenue, New York, NY

10169, Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq. and (z) Richards, Layton &

Finger, PA, One Rodney Square, 920 King Street, Wilmington, DE 19801, Attn: John Knight,

Esq., and (5) co-counsel for Pathlight Capital LLC, (y) Riemer & Braunstein LLP, Times Square

Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn: Steven E. Fox, Esq. and

(z) Ashby & Geddes, P.A., 500 Delaware Avenue, Wilmington, DE 19899, Attn: Gregory A.

Taylor, Esq. (collectively, the "Objection Notice Parties").

## II.     Auction, Bidding Procedures, and Related Relief.

6.     The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**,

are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures

shall govern the submission, receipt, and analysis of all Bids relating to any Transaction.  Any

party desiring to submit a Bid shall comply with the Bidding Procedures and this Order.  The

Debtors are authorized to take any and all actions necessary to implement the Bidding

Procedures and the Debtors and their professionals shall direct and preside over the Auction and

any Sub-Auctions.

7.     Pursuant to that certain *"Interim Order (I) Authorizing Use Of Cash*

*Collateral And Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling A*

*Final Hearing; And (IV) Granting Related Relief,"* entered on October 22, 2019, (the "Interim

Cash Collateral Order") [Docket No. 77], the Debtors have stipulated to the amount, nature,

extent, validity and perfection of the secured claims of (a) Wells Fargo Bank, National

Association ("Wells Fargo") and (b) Pathlight Capital LLC ("Pathlight," and, together with

Wells Fargo, the "Prepetition Secured Parties"), and each therefore has the right under

section 363(k) of the Bankruptcy Code to credit bid the full dollar amount of all Obligations (including any adequate protection) then outstanding.

8.      **Noticing Procedures**.  The Noticing Procedures as set forth in this Order and the Bidding Procedures Motion, including the form of Sale Notice attached hereto as **Exhibit 2**, are hereby approved.  Within one Business Day after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice by first-class mail upon the parties that received notice of the Motion.  On or about the same date, the Debtors will publish the Sale Notice on the Case Information Website and will also publish a notice substantially similar to the Sale Notice in the *New York Times*.  Service of the Sale Notice and publication thereof in the manner described in the Order constitutes good and sufficient notice of the Auction and the Sale Hearing.  No other or further notice is required.

9.      **Cancellation of Auction**.  If the Debtors receive no more than one (1) Qualified Bid, the Debtors reserve the right, in their reasonable discretion following consultation with the Consultation Parties, to (i) notify all potential bidders and the Bankruptcy Court in writing that (a) the Auction is cancelled and (b) such Qualified Bid is the Winning Bid, and (ii) if applicable, seek authority at the Sale Hearing to consummate the Sale transactions with such Qualified Bidder contemplated by its Transaction Documents.

10.     **Sale Hearing**.  The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, 6th Floor, Courtroom 1, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, on **December 12, 2019, at 9:00 a.m** (prevailing Eastern Time) or such other date and time that the Court may later direct and as agreed upon by the Debtors, the Winning Bidder(s), and the Prepetition Secured Parties; *provided, however*, that the Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest

other than by filing a notice on the Court's docket.

11.     **Stalking Horse and Bid Protections**.    The Debtors are authorized, but not obligated, in an exercise of their business judgment and after consulting with the Consultation Parties, to select one or more potential bidders to act as a Stalking Horse Bidder for all or any portion of the Assets and may agree to provide such Stalking Horse Bidder(s) certain bid protections (the "Bid Protections"); *provided* that any such Bid Protections shall be subject to approval by the Court, which the Debtors may seek on an expedited basis pursuant to section 105(a) of the Bankruptcy Code and Local Rule 9006-1(e).

### III.     Approval of the Assumption and Assignment Procedures.

12.     No later than November 19, 2019, the Debtors shall file a cure notice (the "Cure Notice") and service such notice (a) by overnight delivery service upon the Potential Assumption Counterparties at the address set forth in the notice provision of the applicable contract (and their counsel, if known) and (b) by first class mail, email, or fax upon the Notice Parties. The Cure Notice shall notify the Potential Assumption Counterparties that the applicable executory contracts and unexpired leases are subject to potential assumption and assignment and of the Debtors' proposed cure amounts relating to such executory contracts and unexpired leases.

13.     Within twenty-four (24) hours of entry of an order approving a Stalking Horse Bidder or within twenty-four hours following the Bid Deadline for each Qualified Bid, the Debtors will send to each landlord, and their counsel, if known, evidence that any Qualified Bidder that included such lease in its Bid has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) and 365(b)(3) on a confidential basis for all nonpublic information. No later than 4:00 p.m. (prevailing Eastern time) on December 10, 2019, the Debtors will file and serve a notice of auction results (the "Notice of Auction Results"), which shall include the potential

purchasers designation of each such contract or lease, identity of the Winning Bidder, the amount of the Winning Bid, the Back-Up Bidder, and the amount of the Bank-Up Bid(s), and include the list of assumed Executory Contracts submitted with the Winning Bidder's Qualified Bid, or notice of cancellation, as applicable, (a) by overnight delivery service upon the Potential Assumption Counterparties at the address set forth in the notice provision of the applicable contract (and their counsel, if known) and (b) by first class mail, email, or fax upon the Notice Parties.

14.     Parties objecting to a proposed assumption and assignment (other than with respect to cure amounts) and/or to the proposed form of adequate assurance of future performance of an approved Stalking Horse Bidder must file a written objection with the Court by **December 6, 2019, at 4:00 p.m.** (prevailing Eastern Time) or seven days after service of such adequate assurance information, whichever is later, and serve such objection on the Objection Notice Parties.  Objections related solely to the adequate assurance of future performance provided by the Winning Bidder, if the Winning Bidder is not the Stalking Horse Bidder must be made no later than **December 11, 2019, at 5:00 p.m.** (prevailing Eastern Time).  Parties objecting to a proposed cure amount shall file a written objection with the Court by **December 3, 2019, at 4:00 p.m.** (prevailing Eastern Time), and shall serve such objection on the Objection Notice Parties.

15.     If an objection to the Debtors' proposed cure amounts is timely filed and not withdrawn or resolved by the Sale Hearing, such cure objections will not be heard at the Sale Hearing but will be heard at a subsequent hearing later set by the Court.  The Debtors shall proceed with the assumption and assignment of a particular contract at the Sale Hearing, and the pendency of a dispute relating to cure amounts shall not prevent or delay the assumption and

assignment of a contract. Any dispute regarding the cure amounts will either be resolved consensually, if possible, or, if the parties are unable to resolve, at a later date as set by the Court. To the extent an objection relates solely to a disputed cure amount, the Court may approve the assumption and assignment subject to (a) the Potential Assumption Counterparty's right to be heard at a later hearing date on the cure and (b) the below requirements regarding payment of the cure amount. The Debtors shall file and serve a notice for a hearing for the Court to consider the unresolved cure objection(s) at the next scheduled omnibus hearing which shall be set within nineteen days after the Sale Hearing, subject to Court availability, unless the Debtors and the objecting parties agree to a different time and subject to the Court's schedule. The Debtors reserve the right to reject, and not assume and assign, any contract depending on the ultimate resolution of any cure amount dispute; *provided* that, in the case of an unexpired lease of non-residential real property, such determination shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under section 365(d)(4) of the Bankruptcy Code Upon the effective date of the assumption and assignment of the contract (the "Assignment Date"), the Winning Bidder shall pay all undisputed cure amounts to the applicable landlord (excepting any undisputed amounts already paid) pending resolution of the dispute, and any disputed cure amounts shall be reserved in cash in the amount asserted in the applicable landlord's cure objection pending the subsequent hearing to resolve same and upon resolution, such cure amounts shall be paid as soon as reasonably practicable.

16.    If no objection to the assumption of any contract is timely filed, each contract shall be assumed as of the Assignment Date set forth in the applicable Notice of Auction Results or such other date as the Debtors and the Potential Assumption Counterparty agree and the proposed cure amount shall be binding on all Potential Assumption Counterparties and the

Potential Assumption Counterparties will be forever barred from asserting any other claims related to the contract against the Debtors.

17.    The inclusion of a contract on the Notice of Auction Results shall not: (a) obligate the Debtors to assume or assign any contracts listed thereon; or (b) constitute any admission or agreement of the Debtors that such contract is an executory contract. Only those contracts that are included on a schedule of assumed and acquired contracts attached to a final asset purchase agreement will be assumed and assigned.

**IV.    Miscellaneous.**

18.    Notwithstanding anything to the contrary contained in this Order or otherwise: (i) the rights of the Prepetition Secured Parties to consent to the sale of any portion of their collateral, including, without limitation, any Assets, on terms and conditions acceptable to the Prepetition Secured Parties, are hereby expressly reserved and not modified, waived, or impaired in any way by this Order, (ii) all cash proceeds generated from the sale of any Assets shall be paid to the Prepetition Secured Parties in accordance with the terms of the Intercreditor Agreement (as defined in the Interim Cash Collateral Order) upon the closing of such sale for permanent application against the obligations owing by the Debtors to the Prepetition Secured Parties in accordance with the terms and conditions of (a) the Interim Cash Collateral Order or the *Final Order (I) Authorizing Use Of Cash Collateral And Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling A Final Hearing; And (IV) Granting Related Relief*," entered October 22, 2019, [Docket No. 77], as applicable (the "<u>Cash Collateral Order</u>"), (b) the Intercreditor Agreement (as defined in the Cash Collateral Order), and (c) the other Loan Documents (as defined in the Cash Collateral Order), until such time as all such obligations have been Paid in Full (as defined in the Cash Collateral Order), (iii) nothing in this Order shall amend, modify, or impair any provision of the Cash Collateral Order or the rights of Debtors or

the Prepetition Secured Parties thereunder, and (iv) the Debtors shall consult with Consultation Parties prior to employing any additional procedures rules at any Auction.

19.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

20.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

21.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

22.     To the extent the dates and deadlines herein are modified pursuant to the Bidding Procedures and such modification is inconsistent with the requirements of Bankruptcy Local Rule 9006-1(b), such requirements shall be deemed satisfied.

23.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

24.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

25.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order. This Court has the authority to fashion appropriate relief, on an emergency basis or otherwise, for any violations of this Order or the Bidding Procedures.

Dated:  November 14, 2019
Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

## Bidding Procedures

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DESTINATION MATERNITY | ) | Case No. 19-12256 (BLS) |
| CORPORATION, *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS

On October 21, 2019 (the "Petition Date"), Destination Maternity Corporation and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). On October 25, 2019 the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and the Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* Docket No. 106 (the "Bidding Procedures Motion"), seeking approval of, among other things, the procedures to determine the highest or otherwise best offer for the purchase of some or all of the Debtors' assets (the "Assets") through a section 363 sale process (any such purchase, a "Transaction").[2]

On November__, 2019, the Court entered an order approving the Bidding Procedures Motion Docket No. [ ] (the "Bidding Procedures Order" and, the procedures contemplated herein, the "Bidding Procedures"). The Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction of their Assets or sub-groups thereof (each, an "Auction") to determine the Winning Bidder.

### Marketing Process

**I.      Contact Parties.**

The Debtors, in consultation with their investment banker, Greenhill & Co., LLC ("Greenhill"), developed a list of parties who they believe may be interested in, and who the Debtors reasonably believe would have the financial resources to consummate, a Transaction. The list of parties includes both strategic investors and financial investors (collectively, the "Contact Parties"). Greenhill reached out to the Contact Parties to explore their interest in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Destination Maternity Corporation (5573); DM Urban Renewal, LLC (N/A); and Mothers Work Canada, Inc. (4780). The location of the Debtors' principal place of business is 232 Strawbridge Drive, Moorestown, New Jersey 08057.

[2] A sale transaction may be structured as an asset sale or an equity sale, as determined by the Debtors in consultation with the Winning Bidder.

pursuing a Transaction and will continue to reach out to other Contact Parties to gauge their interest. Greenhill will evaluate any additional third parties interested in participating, and any of these parties may become Contact Parties. Parties interested in becoming Contact Parties should contact: Greenhill & Co., LLC, 300 Park Avenue, New York, NY, 10022, Attn: Neil Augustine (neil.augustine@greenhill.com) and Peter Johns (peter.johns@greenhill.com). The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

The Debtors may distribute (to the extent not already distributed) to each Contact Party and any other interested party or potential bidder an "Information Package" consisting of: (a) a copy of the Bidding Procedures, the Bidding Procedures Order, and the Bidding Procedures Motion; (b) a form confidentiality agreement (a "Confidentiality Agreement"); and (c) such other materials as appropriate under the circumstances.

## II.    Participation Requirements.

To receive due diligence information, including access to the Debtors' electronic data room and to receive additional non-public information regarding the Debtors, a potential bidder must deliver to each of: (a) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher T. Greco, P.C., Rebecca Blake Chaikin, and Allyson Smith Weinhouse and (ii) Landis Rath & Cobb LLP, 919 North Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis, Kerri K. Mumford, and Jennifer L. Cree; and (b) financial advisors to the Debtors, Greenhill & Co., LLC, 300 Park Avenue, New York, New York, 10022, Attn: Neil Augustine, Peter Johns, and Taylor Sullivan (collectively, the "Debtors' Advisors"), the following documents (collectively, the "Preliminary Bid Documents"):

a.    an executed Confidentiality Agreement on terms acceptable to the Debtors, to the extent not already executed, which Confidentiality Agreement shall, among other terms, contain customary provisions regarding (i) disclosure and use of confidential information, (ii) not contacting third parties in connection with a Transaction, (iii) not soliciting employees of the Debtors, (iv) not purchasing or otherwise acquiring the Debtors' debt and equity securities, and (v) survival of certain provisions; and

b.    evidence by the potential bidder of its sufficient financial capacity to close a proposed transaction, which may include financial statements of, or verified financial commitments obtained by, the potential bidder (or, if the potential bidder is an entity formed for the purpose of acquiring the Assets, the party that will bear liability for a breach), the adequacy of which will be assessed by the Debtors (with the assistance of the Debtors' advisors) in consultation with the Consultation Parties.

Only those potential bidders that have submitted acceptable Preliminary Bid Documents, as determined by the Debtors in consultation with their advisors and the Consultation Parties (defined below) (each, an "Acceptable Bidder"), may submit Bids.

Beginning on or as soon as is reasonably practicable after the Debtors determine that a potential bidder is an Acceptable Bidder, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room for the benefit of all Acceptable Bidders.  All due diligence requests must be directed to Greenhill.  To the extent reasonably practicable, Greenhill will also facilitate meetings between any interested Acceptable Bidder and the Debtors' management team, which meetings will proceed in a manner determined by the Debtors, in their discretion.  The due diligence period will end on the Bid Deadline, as defined below, and, subsequent to the Bid Deadline, the Debtors will have no obligation to furnish any due diligence information.

The Debtors and their advisors will coordinate all reasonable requests from Acceptable Bidders for additional information and due diligence access; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, at such time and in the Debtors' business judgment, have not established, or who have raised doubt, that such Acceptable Bidder intends in good faith to, or has the capacity to, consummate a Transaction.  No potential bidder, Acceptable Bidder, or Qualified Bidder shall communicate with any of the Debtors' employees, landlords, vendors, or other potential bidder, Acceptable Bidder, or Qualified Bidder with respect to any Bid or Transaction absent the prior written consent of the Debtors; *provided* that if such consent is given a representative of the Debtors shall be present for or party to any such communications (unless otherwise agreed by the Debtors in their sole discretion).

For any Acceptable Bidder who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold, redact, code, or to delay providing any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such Bidder at such time.

Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Acceptable Bidder and its contemplated Transaction.

## Stalking Horse Bid Deadline and Bid Protections

Upon entry of the Bidding Procedures Order, the Debtors may, as an exercise of their business judgment and in consultation with the Consultation Parties, select one or more Acceptable Bidders to act as a stalking horse bidder (a "Stalking Horse Bidder" and, such bid, the "Stalking Horse Bid") in connection with the Auction.

In the event that the Debtors select one or more Stalking Horse Bidder(s) in accordance with the Bidding Procedures, the Debtors shall be fully authorized, subject to the consent of the Prepetition Secured Parties, but not obligated, in an exercise of their business judgment (in consultation with the Committee) to offer bid protections to such Stalking Horse Bidder(s), subject to entry of the Bid Protections Approval Order, payable if the Debtors consummate a Transaction pursuant to a Qualified Bid other than the Stalking Horse Bid (if the Assets subject to such sale are those to which such Stalking Horse Bid relates) paid out of the proceeds of the sale to which they relate (the "Bid Protections").

Promptly upon the Debtors' decision to offer Bid Protections to any Stalking Horse Bidder(s), the Debtors shall file a notice and serve such notice on the Notice Parties and request a hearing before the Court seeking approval of such Bid Protections (the "Bid Protections Approval Order"), which the Debtors may seek on an expedited basis pursuant to section 105(a) of the Bankruptcy Code and Local Rule 9006-1(e). Parties in interest may object to the terms of any such Bid Protections (each, a "Bid Protections Objection"). In absence of a Bid Protection Objection, the Debtors will submit the Bid Protection Approval Order to the Court, which may enter such Order without a hearing.

## Auction Process

**I.    Bid Deadline.**

An Acceptable Bidder that desires to make a proposal, solicitation, or offer (each, a "Bid") shall transmit such proposal, solicitation, or offer via email (in pdf or similar format) so as to be **actually received** on or before **December 5, 2019, at 5:00 p.m.** (prevailing Eastern Time) (the "Bid Deadline") by:

    a.    Greenhill & Co., LLC, 300 Park Avenue, New York, New York, 10022, Attn: Neil Augustine (neil.augustine@greenhill.com), Peter Johns (peter.johns@greenhill.com), and Taylor Sullivan (Taylor.Sullivan@greenhill.com).

    b.    Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher T. Greco, P.C. (christopher.greco@kirkland.com), Rebecca Blake Chaikin (rebecca.chaikin@kirkland.com), and Allyson Smith Weinhouse (allyson.smith@kirkland.com) and Landis Rath & Cobb LLP, 919 North Market Street, Suite 1800, Wilmington, Delaware 19801 Attn: Adam Landis (landis@lrclaw.com), Kerri K. Mumford (mumford@lrclaw.com), and Jennifer L. Cree (cree@lrclaw.com).

    c.    Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Daniel F. Fiorillo, (dfiorillo@otterbourg.com) and Chad B. Simon (csimon@otterbourg.com).

    d.    Reimer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York 10036, Attn: Steven E. Fox (sfox@riemerlaw.com).

    e.    Cooley LLP, 55 Hudson Yards, New York, NY 10001-2157 (Attn: Seth Van Aalten (svanaalten@cooley.com), Cathy Herschopf (cherschopf@cooley.com) and Michael Klein (mklein@cooley.com) and Cole Schotz P.C., 500 Delaware Ave, Suite 1410, Wilmington, DE 19801, Attn: David Dean (ddean@coleschotz.com).

**II.    Bid Requirements.**

Each Bid by an Acceptable Bidder (a "Bidder") must be submitted in writing and satisfy

the following requirements (collectively, the "Bid Requirements"):

a.    Purpose. Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to purchase some or all of the Assets and state which Assets with reasonable specificity.  Each Acceptable Bid must clearly identify the following: (1) contracts to be assumed, including cure amounts to be paid, if any, and parties responsible for payment thereof; (2) leases of equipment or stores to be assumed; and (3) which employees or groups thereof will be offered employment.

b.    Purchase Price:  Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, including, for example, certain liabilities to be assumed by the Acceptable Bidder (the "Purchase Price"). The Debtors will consider all Acceptable Bids, but have a material preference for all cash bids.

c.    Deposit:  Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate value of the cash and non-cash consideration of the Bid to be held in an escrow account to be identified and established by the Debtors (the "Deposit"), *provided* that no Secured Creditor will be required to provide a deposit with respect to the portion of any Bid that is a credit bid.[3]

d.    Marked Agreement:  Each Bid must include, at a minimum, a draft asset purchase agreement, the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (the "Asset Purchase Agreement"), together with a redline version of the revised Asset Purchase Agreement to the form, including the exhibits and schedules related thereto and any related Transaction documents or other material documents integral to such Bid, pursuant to which the Acceptable Bidder proposes to effectuate the Transaction (collectively, the "Transaction Documents").

e.    Committed Financing:  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's Purchase Price and other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors and reasonably acceptable to each of the Consultation Parties.

---

[3] A non-Debtor counterparty that is credit bidding for its own lease shall not be required to provide a deposit in connection with its credit bid, *provided* that such counterparty otherwise complies with the Bid Procedures in all other respects; *provided further* that any non-Debtor counterparty that is the Winning Bidder for its own lease shall waive any request for cure in connection with such lease.

f.  <u>Unconditional Offer / Contingencies</u>:  A statement that the Bid is formal, binding, and unconditional and is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Potential Bidder that such Bid is not a Winning Bid or a Backup Bid.

g.  <u>Identity</u>:  Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder, including if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation.  Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid.  Each Bid must also include contact information for the specific person(s), counsel and other advisors whom the Debtors' Advisors should contact regarding such Bid. Nothing herein shall preclude multiple Acceptable Bidders from submitting a joint Bid, subject to the Debtors' prior written consent (following consultation with the Consultation Parties) to such submission and the disclosure requirements set forth herein.

h.  <u>Adequate Assurance</u>:  Each Bid must contain evidence that the Acceptable Bidder has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under sections 365(b)(1) of the Bankruptcy Code.  Such evidence should be sufficient to satisfy the requirements of the Bankruptcy Code and, solely with respect to real estate leases, should include: (i) the exact name of the entity that will be designated as the proposed assignee of the leases; (ii) audited or if not available, non-audited, financial statements, and any supplemental schedules for the calendar years ended 2017 and 2018 for the proposed assignee and any proposed guarantor, (iii) any documents regarding the proposed assignee's and any guarantor's experience in operating retail stores, (iv) the number of retail stores the proposed assignee and any guarantor operates and the trade names used; and (v) any additional evidence of financial wherewithal, including cash available and any debt or equity commitments or other forms of liquidity post-closing..  Such evidence may also include audited and unaudited financial statements, tax returns, bank account statements, a description of the proposed business to be conducted at the premises and/or any other documentation that the Debtors further request.[4]

i.  <u>Authorization</u>:  Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the Transactions contemplated in such Bid.

---

[4] This requirement shall not apply to an Acceptable Bidder who is a non-Debtor counterparty that is credit bidding solely for its own lease.

j.     <u>As-Is, Where-Is</u>:    Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (1) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its Bid; (2) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (3) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's Transaction Documents.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. **The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets as reflected in such Bid.**

## III.    Designation of Qualified Bidders.

A Bid will be considered a "<u>Qualified Bid</u>," and each Acceptable Bidder that submits a Qualified Bid will be considered a "<u>Qualified Bidder</u>," if the Debtors determine, in their business judgment, following consultation with the Consultation Parties, that such Bid:

a.     satisfies the Bid Requirements set forth above; and

b.     is reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Winning Bid (as defined below), within a time frame acceptable to the Debtors and in no event later than December 31, 2019.

As soon as practicable and no later than twenty-four (24) hours prior to the Auction, the Debtors will notify each Qualified Bidder whether such party is a Qualified Bidder.

If, following consultation with Consultation Parties, any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Acceptable Bidder's Deposit on the date that is three business days after the Bid Deadline, or as soon as is reasonably practicable thereafter. The Debtors reserve the right to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid.

Between the date that the Debtors notify an Acceptable Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the prior written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase their Purchase Price, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided* that any Qualified Bid may be improved at the Auction as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

Notwithstanding anything herein to the contrary, the Debtors reserve the right, following consultation with the Consultation Parties, (a) to work with potential bidders and Acceptable Bidders to aggregate two or more Bids into a single consolidated Bid prior to the Bid Deadline or (b) to work with Qualified Bidders to aggregate two or more Qualified Bids into a single Qualifying Bid prior to the conclusion of the Auction. No bidders, Acceptable Bidders, or Qualified Bidders may aggregate any Bids without the Debtors' prior consent (following consultation with the Consultation Parties). Bids for different groups of Assets shall be subject to the Sub-Auction framework outlined below.

## IV.    Right to Credit Bid.

Any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Creditor") shall have the right to credit bid all or a portion of such Secured Creditor's allowed claims pursuant to section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; *provided, further*, that a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any Assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment). For the avoidance of doubt, a Secured Creditor shall be required to provide cash consideration in respect of any Assets to be acquired but that do not constitute collateral securing such Secured Creditor's claim(s).

Pursuant to that certain "*Interim Order (I) Authorizing Use Of Cash Collateral And Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling A Final Hearing; And (IV) Granting Related Relief*," entered October 22, 2019 (the "Interim Cash Collateral Order"), the Debtors have stipulated to the amount, nature, extent, validity and perfection of the secured claims of (a) Wells Fargo Bank, National Association ("Wells Fargo") and (b) Pathlight Capital LLC ("Pathlight" and, together with Wells Fargo the "Prepetition Secured Parties"), and each therefore has the right under section 363(k) of the Bankruptcy Code to credit bid the full dollar amount of all Obligations (as defined in each of the ABL Credit Agreement and Term Loan Credit Agreement) (including any adequate protection) then outstanding.

With respect to a Bid for its own lease, a non-Debtor lease counterparty may credit bid only an amount equal to the cure amount for such lease that is mutually acceptable to the Debtors (in consultation with the Consultation Parties) and such lease counterparty or such other amount as may be determined by the Court. The lease counterparty shall receive a dollar-for-dollar credit in the amount of its credit bid when such lease counterparty bids for its own lease.

## V.     Auction.

If the Debtors receive only one Qualified Bid prior to the Bid Deadline, the Debtors reserve the right, following consultation with the Consultation Parties, to designate such Bid as the Winning Bid.  If the Debtors receive two or more Qualified Bids prior to the Bid Deadline, the Debtors will conduct the Auction to determine the Winning Bidder with respect to all or substantially all of the Debtors' Assets.   The Auction shall take place no later than December 9, 2019, at 9:00 a.m. (prevailing Eastern Time), at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later date and time as selected by the Debtors.

No later than the day before the Auction, at 5:00 p.m. (prevailing Eastern Time), the Debtors, after consultation with the Consultation Parties, will notify all Qualified Bidders of the highest or otherwise best Qualified Bid, or, if multiple bids are received in respect of non-overlapping Assets, the highest or best Qualified Bid(s) received in relation to each group of Assets, in each case as determined in the Debtors' business judgment (each such bid, a "Baseline Bid"), and provide copies of the documents supporting the Baseline Bid(s) to all Qualified Bidders and the Consultation Parties.  The determination of which Qualified Bid(s) constitutes the Baseline Bid(s) and which Qualified Bid(s) constitutes the Winning Bid(s) shall take into account any factors the Debtors and the Consultation Parties reasonably deem relevant to the value of the Qualified Bid to the Debtors' estates, including, among other things: (a) the type and amount of Assets sought to be purchased in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of best Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Baseline Bid; (e) the tax consequences of such Qualified Bid; (f) the assumption of obligations, including contracts and leases; (g) the cure amounts to be paid; and (h) the impact on employees, including the number of employees proposed to be transferred and employee-related obligations to be assumed   (collectively, the "Bid Assessment Criteria").

The Auction shall be conducted in a timely fashion according to the following procedures:

a.     The Debtors Shall Conduct the Auction

The Debtors and their professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid(s).  All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders and the Consultation Parties.  The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, the Winning Bid(s), and any Backup Bid(s).

If one or more Qualified Bid(s) exist for acquiring specific sub-groups of the Debtors' Assets, then the Debtors may first conduct a Sub-Auction for each of these businesses or Assets that has at least one Qualified Bid pursuant to the Bid Procedures.  The Debtors may, in the exercise of their reasonable business judgment, following consultation with the Consultation

Parties, identify the highest or otherwise best Qualified Bid as the reserve bid for each Sub-Auction (each, a "Reserve Sub-Auction Bid" and the bidder submitting such bid, a "Reserve Sub-Auction Bidder"). The Debtors may also identify a Qualified Bidder that submitted the next highest or otherwise best Qualified Bid in each Sub-Auction, following consultation with the Consultation Parties, as a backup bid (each, a "Backup Sub-Auction Bid" and, the bidder submitting such bid, a "Backup Sub-Auction Bidder"). After the designation of any Reserve Sub-Auction Bid, the Debtors may conduct an Auction for the Debtors' Assets on a consolidated basis pursuant to the Auction Rules.

If no Qualified Bid exists for acquiring specific sub-groups of the Debtors' Assets, the Debtors shall conduct an Auction for the Debtors' business on a consolidated basis pursuant to the Auction Rules.

To the extent the Debtors conduct multiple auctions for different subgroupings of the Debtors' Assets/businesses (each, a "Sub-Auction") at any Sub-Auction, if a Qualified Bidder declines to participate in any specific Sub-Auction or Sub-Auctions, or any round of bidding for such specific Sub-Auctions, such Qualified Bidder shall still be permitted to offer a Bid in subsequent Sub-Auctions, including bids that include Assets/businesses subject to a prior Sub-Auction, which includes the right to bid on groupings of Assets/businesses that may include specific Assets/businesses which were the subject of an earlier Sub-Auction.

Only (i) Qualified Bidders, (ii) the Consultation Parties, (iii) the members of the Committee, and with respect to (i) through (iii), each of their respective legal and financial advisors, and (iv) any creditor who provides written notice to Debtors' counsel two business days prior to the Auction, shall be entitled to attend the Auction, and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction.

b.    Terms of Overbids

"Overbid" means any bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid. Each Overbid must comply with the following conditions:

   (i)    Minimum Initial Overbid. Any Overbid following the Baseline Bid shall be no less than the value of the Bid Protections, if any, plus a value equal to $500,000, as determined by the Debtors in an exercise of their business judgment.

   (ii)    Minimum Overbid Increment. Any Overbid to a Prevailing Highest Bid (as defined below) shall be in increments of no less than a value equal to $300,000, as determined by the Debtors in an exercise of their business judgment and in consultation with the Consultation Parties.

   (iii)    Conclusion of Each Overbid Round. Upon the solicitation of each round of Overbids, the Debtors may announce a deadline (as the Debtors may, in their business judgment, and with the consent of the Prepetition Secured

Parties, extend from time to time, the "<u>Overbid Round Deadline</u>") by which time any Overbids must be submitted to the Debtors and the Consultation Parties.

(iv)    <u>Overbid Alterations</u>.  An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

(v)    <u>No Round-Skipping</u>.  Round-skipping, as described herein, is explicitly prohibited.  To remain eligible to participate in the Auction or specific a Sub-Auction for a particular Asset or business, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment, following consultation with the Consultation Parties, such Qualified Bidder shall be disqualified from continuing to participate in the Auction for such Asset or business; *provided* that with the consent of the Consultation Parties, the Debtors may adopt and utilize Auction procedures other than the foregoing procedure for any round of bidding.

(vi)    <u>Announcing Highest Bid</u>.  With respect to any Auction or Sub-Auction, the Debtors shall, subsequent to each Overbid Round Deadline, announce whether the Debtors in consultation with the Consultation Parties have identified (a) in the initial Overbid round, an Overbid as being higher or otherwise better than the Baseline Bid in respect of the Assets that are the subject of the Auction or Sub-Auction or (b) in subsequent rounds, an Overbid as being higher or otherwise better than the Overbid previously designated by the Debtors as the prevailing highest or otherwise best Bid (the "<u>Prevailing Highest Bid</u>").  The Debtors shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtors as the Prevailing Highest Bid as well as the value attributable by the Debtors to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

c.    <u>Consideration of Overbids</u>

The Debtors reserve the right, in their business judgment, and in consultation with the Consultation Parties, to adjourn the Auction or Sub-Auction one or more times with the consent of the Prepetition Secured Parties, to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such

additional evidence as the Debtors, in their business judgment, may require, that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing Overbid amount.

      d.      <u>Closing the Auction</u>

The Auction or Sub-Auctions shall continue until there is only one Qualified Bid that the Debtors determine, in their business judgment following consultation with the Consulting Parties, to be the highest or otherwise best Qualified Bid for the Assets, in the case of an Auction, or the specific Assets or business that are the subject of a specific Sub-Auction. Such Qualified Bid shall be declared the "<u>Winning Bid</u>," and such Qualified Bidder, the "<u>Winning Bidder</u>," at which point the Auction or Sub-Auction will be closed. The Auction or Sub-Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction or Sub-Auction to the then Prevailing Highest Bid. Such acceptance by the Debtors of such Winning Bid is conditioned upon approval by the Court of such Winning Bid. If, upon the completion of an Auction, the Debtors, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, based on the evaluation metrics provided herein, following consultation with the Consulting Parties, determine that pursuing a Transaction pursuant to the Reserve Sub-Auctions Bid(s) will result in a higher or otherwise better value of the Debtors' businesses than pursuing a Transaction pursuant to the highest or otherwise best Bid received in the Auction of the Debtors' businesses or Assets on a consolidated basis, then the Debtors may, in the exercise of their reasonable business judgment, declare the Reserve Sub-Auction Bid(s) as Winning Bid(s) (and the Reserve Sub-Auction Bidder(s) as Winning Bidders) and the Backup Sub-Auction Bid(s) as the Backup Bid(s) (and the Backup Sub-Auction Bidder(s) as Backup Bidder(s)). For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their respective fiduciary duties under applicable law. As soon as reasonably practicable after closing the Auction, the Debtors shall finalize definitive documentation to implement the terms of the Winning Bid, and, as applicable, cause such definitive documentation to be filed with the Court.

      e.      <u>No Collusion; Good-Faith *Bona Fide* Offer</u>

Each Qualified Bidder participating at the Auction will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion with respect to the bidding, and (ii) its Qualified Bid is a good-faith *bona fide* offer and it intends to consummate the proposed Transaction if selected as the Winning Bidder.

**VI.    Backup Bidder.**

      a.      Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction or Sub-Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Qualified Bid at the Auction or Sub-Auction for the Assets or any sub-group thereof, as determined by the Debtors in the exercise of their business judgment, shall be required to serve as a backup bidder (the "<u>Backup Bidder</u>") with respect to the Assets or the specified sub-group thereof that was the subject of the specific Sub-Auction until such time that the

Transaction is consummated, and each Qualified Bidder shall agree and be deemed to agree to be a Backup Bidder if so designated by the Debtors.

b.    The identity of a Backup Bidder and the amount and material terms of the Qualified Bid of such Backup Bidder shall be announced by the Debtors, at the conclusion of the Auction or relevant Sub-Auction at the same time the Debtors announce the identity of the Winning Bidder related thereto. Such Backup Bidder shall be required to keep its Qualified Bid (or if the Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until such time that the Transaction is consummated. Each Backup Bidder's Deposit shall be held in escrow consummation of the Approved Transaction.

If a Winning Bidder fails to consummate the Approved Transactions contemplated by its Winning Bid, the Debtors may select the Backup Bidder with respect to the Assets or relevant sub-group of the Debtors' Assets or business as the Winning Bidder, and such Backup Bidder shall be deemed a Winning Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder. A hearing to authorize a sale to the Backup Bidder will be held before the Court on no less than five (5) days' notice, with supplemental objections due at least one (1) day prior to such hearing ("Backup Sale Hearing"). For the avoidance of doubt, only parties who timely filed a Sale Objection may supplement their objection to the Backup Bidder and all such issues shall be limited to issues relating to the identity of the Backup Bidder, such as adequate assurance and assignments of Contracts or Leases to the Backup Bidder. In such case, the defaulting Winning Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Winning Bidder, including with respect to specific performance.

## VII.   Notice and Consultation Parties.

Information that is provided to the "Notice Parties" under these Bidding Procedures must be provided to the following parties: (a) counsel to Wells Fargo, as administrative agent and lender under the Debtors' prepetition revolving credit facility and lender under the Debtors' prepetition term loan facility, Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Daniel F. Fiorillo, and Chad B. Simon; (b) counsel to Pathlight, as administrative agent and lender under the Debtors' prepetition term loan facility, Reimer & Braunstein LLP, Times Square Tower, Suite 2506, Seven Times Square, New York, New York 10036, Attn: Steven E. Fox; (c) proposed counsel to the Official Committee of Unsecured Creditors (the "Committee"), Cooley LLP, 55 Hudson Yards, New York, NY 10001-2157, Attn: Seth Van Aalten, Cathy Herschopf and Michael Klein and Cole Schotz P.C., 500 Delaware Ave, Suite 1410, Wilmington, DE 19801, Attn: David Dean; and (e) the Office of the U.S. Trustee for the District of Delaware.

The term "Consultation Parties" shall mean: (a) Wells Fargo; (b) Pathlight; and (c) the Committee, in each case, only to the extent that such party is not a Qualified Bidder with respect to the Auction or Sub-Auction in question.

## VIII.    "As Is, Where Is".

Consummation of any Transaction will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted or agreed to by the Debtors in the Transaction Documents. Except as specifically accepted or agreed to by the Debtors, all of the Debtors' right, title, and interest in and to the respective Assets will be transferred, free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f) of the Bankruptcy Code.

By submitting a Bid, each Acceptable Bidder will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct adequate due diligence regarding the Assets prior to making its Bid, (b) has relied solely on its own independent review, investigation, and inspection of any document including, without limitation, executory contracts and unexpired leases, in making its Bid, and (c) did not rely on or receive from any party any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Assets or the completeness of any information provided in connection with the Transaction or the Auction.

## IX.    Reservation of Rights.

The Debtors reserve their rights to modify these Bidding Procedures, with the reasonable consent of the Prepetition Secured Parties, and in consultation with the Consultation Parties, in their business judgment in any manner that will best promote the goals of these Bidding Procedures or impose at or prior to the Auction, additional customary terms and conditions on a Transaction, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction, including modifying Bid increments; (d) canceling the Auction; and (e) rejecting any or all Bids or Qualified Bids.

## X.    Consent to Jurisdiction.

All Qualified Bidders at the Auction shall be deemed to have consented to the exclusive jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures.

## XI.    Sale Hearing.

A hearing to consider approval of the sale transaction (the "Sale Hearing"), pursuant to which the Debtors and the Winning Bidder will consummate the Transaction (the "Approved Transaction"), will be held no later than December 12, 2019, and otherwise in accordance with any scheduling order entered by the Court. The Approved Transaction shall be consummated by December 31, 2019, or such later date as to which the Debtors, the Winning Bidder, and the Prepetition Secured Parties, agree.

**The Sale Hearing may be continued to a later date by the Debtors by sending notice**

**prior to, or making an announcement at, the Sale Hearing; provided that the Prepetition Secured Parties consent to such later date.  No further notice of any such continuance will be required to be provided to any party.**

Any objections to the sale transaction must be received by **December 6, 2019, at 4 p.m.** (prevailing Eastern Time) (the "<u>Sale Objection Deadline</u>").

## XII.    Return of Deposit.

The Deposit of each Winning Bidder shall be applied to the purchase price of such transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to each Winning Bidder and each Backup Bidder) on the date that is three business days after the Auction, or as soon as is reasonably practicable thereafter.  Upon the return of the Deposits, the applicable Qualified Bidders shall receive any and all interest that will have accrued thereon.

If a Winning Bidder fails to consummate a proposed transaction because of a breach by such Winning Bidder, the Debtors shall (a) retain the Deposit as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, (b) to the extent the Obligations (as defined in the ABL Credit Agreement) have not been Paid in Full, remit the proceeds of the Deposit to the ABL Agent, and (c) be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

## XIII.    Fiduciary Duties

Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law.  For the avoidance of doubt, any exercise of fiduciary duties that is materially inconsistent with these Bid Procedures shall be subject to approval by the Court.

*          *          *

**EXHIBIT 2**

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DESTINATION MATERNITY | ) | Case No. 19-12256 (BLS) |
| CORPORATION, et al.,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 106** |

### NOTICE OF SALE, BIDDING PROCEDURES, AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") on October 21, 2019 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE** that, on October 25, 2019, the Debtors filed a motion [D.I. 106] (the "Bid Procedures Motion")[2] with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids (the "Bidding Procedures") in connection with the proposed sale of the Debtors' Assets or a sub-group thereof (the "Sale"), subject to the submission of higher or otherwise better offers in an auction process (the "Auction"), (b) the form and manner of notice related to the Sale, and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale.

**PLEASE TAKE FURTHER NOTICE** that, on November __, 2019, the Court entered an order [D.I. __] (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale and the Auction. All interested bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Destination Maternity Corporation (5573); DM Urban Renewal, LLC (N/A); and Mothers Work Canada, Inc. (4780). The location of the Debtors' principal place of business is 232 Strawbridge Drive, Moorestown, New Jersey 08057.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures or Bidding Procedures Motion.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

## Contact Persons for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in making an offer to purchase the Assets must comply strictly with the Bidding Procedures. Only Qualified Bids will be considered by the Debtors, in accordance with the Bidding Procedures.

**Any interested bidder should contact, as soon as practicable:**

Greenhill & Co., LLC
300 Park Avenue,
New York, NY, 10022,
Attn: Neil Augustine (neil.augustine@greenhill.com) and
Peter Johns (peter.johns@greenhill.com).

## Obtaining Additional Information

Copies of the Bidding Procedures Motion, the Bidding Procedures, and the Bidding Procedures Order, as well as all related exhibits, including all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at *https://cases.primeclerk.com/destinationmaternity,* and all filings related to the Sale shall be under the Sale Tab.

## Important Dates and Deadlines[4]

1. **Bid Deadline.** The deadline to submit a Qualified Bid is **December 5, 2019, at 5:00 p.m.** (prevailing Eastern Time).

2. **Cure Objection Deadline.** The deadline to file an objection with the Court to the amount of a Cure Claim is **December 3, 2019 at 4 p.m.** (prevailing Eastern Time).

3. **Auction and Sale Objections Deadline.** The deadline to file an objection with the Court to the Sale, and all objections relating to the Stalking Horse Bidder (if any), including to the assumption and assignment of executory contracts to the Stalking Horse Bidder, and lack of adequate assurance from the Stalking Horse Bidder (collectively, the "Sale Objections") is **December 6, 2019, at 4:00 pm.** (prevailing Eastern Time) or seven days from service of adequate assurance information (the "Sale Objection Deadline").

4. **Auction.** In the event that the Debtors timely receive a Qualified Bid in addition to the Qualified Bid of a Stalking Horse Bidder (if any) and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Assets. The Auction shall be open to (i) Qualified Bidders, (ii) the Consultation Parties, and (iii) the members of the Committee, and with respect to

---

[4] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

{1258.001-W0058293.4}

(i) through (iii), each of their respective legal and financial advisors shall be entitled to attend the Auction. The Auction, if one is held, will commence on **December 9, 2019 at 9:00 a.m. (prevailing Eastern Time)** at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later date and time as selected by the Debtors, who shall notify all Qualified Bidders.

5. **Time for Debtors to Provide Notice of Results of Auction**. As soon as reasonably practicable after the close of the Auction, and in any case no later than 4:00 p.m. (prevailing Eastern Time) on December 10, 2019, the Debtors shall (a) file the Notice of Auction Results with the Court (which notice shall identify the Winning Bidder, the amount of the Winning Bid, the Back-Up Bidder, and the amount of the Back-Up Bid(s), and include the list of assumed Executory Contracts submitted with the Winning Bidder's Qualified Bid), (b) cause the Notice of Auction Results to be published on the Case Information Website under the Sale Tab, and (c) serve the Notice of Auction Results by email, fax, or (if neither is available), overnight mail to all counterparties to Assumed Contracts.

6. **Objections to Adequate Assurance if the Winning Bidder is not the Stalking Horse Bidder.** Objections of any Potential Assumption Counterparty related solely to the adequate assurance of future performance provided by the Winning Bidder, if the Winning Bidder is not the Stalking Horse Bidder (any such objection, an "Adequate Assurance Objection"), must be made no later than **December 11, 2019, at 5:00 p.m.** (prevailing Eastern Time) (the "Adequate Assurance Objection Deadline").[5]

7. **Sale Hearing**. A hearing (the "Sale Hearing") to consider the proposed Sale will be held before the Court on **December 12, 2019 at 9:00 a.m.** (prevailing Eastern Time), or such other date as determined by the Court, at 824 North Market Street, Wilmington, Delaware 19801.

## Filing Objections

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Clerk of the Bankruptcy Court, 824 N. Market St., Wilmington, Delaware 19801, by no later than **the Sale Objection Deadline** of **December 6, 2019 at 4:00 p.m.** (prevailing Eastern Time) and (d) be served on (1) proposed counsel for the Debtors, (y) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher T. Greco, Rebecca Blake Chaikin, and Allyson Smith Weinhouse and (z) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis and Kerri K. Mumford, (2) counsel to the Official Committee of Unsecured Creditors, proposed counsel to the Official Committee of Unsecured Creditors (y) Cooley LLP, 55 Hudson Yards, New York, NY 10001-2157, Attn: Seth Van Aalten, Cathy Herschopf and Michael Klein and (z) Cole Schotz P.C., 500 Delaware Ave, Suite 1410, Wilmington, DE 19801, Attn: David Dean (3) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington,

---

[5] If the Stalking Horse Bidder is the Winning Bidder, objections to adequate assurance must be filed by the Sale Objection Deadline.

{1258.001-W0058293.4}

Delaware, 19801, Attn: Timothy J. Fox, (4) co-counsel to Wells Fargo Bank, National Association, (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq. and (z) Richards, Layton & Finger, PA, One Rodney Square, 920 King Street, Wilmington, DE 19801, Attn: John Knight, Esq., and (5) co-counsel for Pathlight Capital LLC, (y) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn: Steven E. Fox, Esq. and (z) Ashby & Geddes, P.A., 500 Delaware Avenue, Wilmington, DE 19899, Attn: Gregory A. Taylor, Esq. (collectively, the "<u>Objection Notice Parties</u>").

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Except as otherwise ordered by the Court, any party or entity who fails to timely make an objection to the Sale on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order and this Notice shall be forever barred from asserting any objection to the Sale, including with respect to the transfer of the assets free and clear of all liens, claims, encumbrances and other interests.*

## NO SUCCESSOR LIABILITY

*For more information on the Debtors' business or their products, refer to the First Day Declaration filed on the docket at ECF No. 3. By the Bidding Procedures Motion, the Debtors are seeking to have their assets transferred to the Winning Bidder free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale. Accordingly, by the Bidding Procedures Motion, the Debtors are seeking the Court to order that, as a result of the Sale, the Winning Bidder will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Winning Bidder will have no liability, except as expressly provided in the Purchase Agreement, for any liens, claims, encumbrances and other interests against or in any of the Debtors under any theory of law, including successor liability theories.*

*[Remainder of This Page Intentionally Left Blank]*

Dated: _____, 2019        /s/ _____

Wilmington, Delaware

**LANDIS RATH & COBB LLP**
Adam G. Landis (DE Bar No. 3407)
Kerri K. Mumford (DE Bar No. 4186)
Jennifer L. Cree (DE Bar No. 5919)
919 North Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:    (302) 467-4400
Facsimile:    (302) 467-4450
Email:       landis@lrclaw.com
              mumford@lrclaw.com
              cree@lrclaw.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:       christopher.greco@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

## **EXHIBIT 3**

**Form of Potential Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DESTINATION MATERNITY | ) | Case No. 19-12256 (BLS) |
| CORPORATION, *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 106** |

## NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF
## EXECUTORY CONTRACTS OR UNEXPIRED LEASES AND CURE AMOUNT

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") on October 21, 2019 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE** that, on October 25, 2019 the Debtors filed a motion (the "Bid Procedures Motion")[2] with the Court seeking entry of orders, among other things, approving (a) procedures for the solicitation of bids (the "Bidding Procedures") in connection with the proposed sale of substantially all of the Debtors' assets (the "Sale"), subject to the submission of higher or otherwise better offers in an auction process (the "Auction"), (b) the form and manner of notice related to the Sale and (c) procedures for the assumption and assignment of contracts and leases in connection with the Sale (the "Assumption and Assignment Procedures").

**PLEASE TAKE FURTHER NOTICE** that, on November ____, 2019, the Court entered an order (the "Bidding Procedures Order") [Docket No. __] approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale and the Auction, and the Assumption and Assignment Procedures.

**PLEASE TAKE FURTHER NOTICE** that, upon the closing of the Sale, the Debtors intend to assume and assign to the Winning Bidder the Potentially Assumed Contracts. A schedule listing the Potentially Assumed Contracts (the "Executory Contract List") is attached hereto and may also be accessed free of charge on the Debtors' case information website, located

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Destination Maternity Corporation (5573); DM Urban Renewal, LLC (N/A); and Mothers Work Canada, Inc. (4780). The location of the Debtors' principal place of business is 232 Strawbridge Drive, Moorestown, New Jersey 08057.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion or the Bidding Procedures.

at *https://cases.primeclerk.com/destinationmaternity*, under the Sale Tab.  In addition, the "Cure Claims," if any, necessary for the assumption and assignment of the Potentially Assumed Contracts are set forth on the Executory Contract List.  *Each Cure Claim listed on the Executory Contract List represents all liabilities of any nature that the Debtors believe they have arising under an Assumed Contract prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such liabilities arise out of or relate to events occurring prior to the closing of the Sale.  If you believe your Cure Claim is listed with an incorrect amount on the Executory Contract List, you must object in accordance with the procedures described in this Notice by no later than the Cure Objection Deadline set forth below under the heading "Important Dates and Deadlines."*

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS A POTENTIAL ASSUMPTION COUNTERPARTY TO A POTENTIALLY ASSUMED CONTRACT.  Subject to the terms of the Assumption and Assignment Procedures, the Debtors or the Winning Bidder may, at any time prior to the closing of the Sale, (a) designate a Contract on the attached Executory Contract List as an Assumed Contract or as a Contract that will not be assumed and assigned to the Winning Bidder (an "Excluded Contract"), (b) add a Contract to the Executory Contract List, or (c) modify the previously-stated Cure Claims associated with any Proposed Assumed Contract.  The Assumption and Assignment Procedures further provide that any Potential Assumption Counterparty whose Contract is added to the Executory Contract List after the date hereof, or whose previously-stated Cure Claim is modified, will in each case receive notice thereof and an opportunity to file an objection thereto.  *The assumption and assignment of the Contracts on the Executory Contract List is not guaranteed and is subject to approval by the Court and the Debtors' or the Winning Bidder's right to not designate a Contract on the Executory Contract List as an Assumed Contract.*

### Obtaining Additional Information

Copies of the Bidding Procedures Motion, the Bidding Procedures and the Bidding Procedures Order, as well as all related exhibits, including all other documents filed with the Court, are available free of charge on the Debtors' case information website, located at *https://cases.primeclerk.com/destinationmaternity*, and all filings related to the sale shall be under the Sale Tab.

The Debtors shall provide Adequate Assurance Information (as defined in the Bidding Procedures) for the Stalking Horse Bidder (if any) or Qualified Bidders as set forth in the Bidding Procedures Order.

**Important Dates and Deadlines**[3]

1. **Cure Objection Deadline**. The deadline to file an objection with the Court to the amount of a Cure Claim is **December 3, 2019 at 4 p.m.** (prevailing Eastern Time).

2. **Sale Objections Deadline**. The deadline to file an objection with the Court to the Sale, and all objections relating to the Stalking Horse Bidder (if any), including to the assumption and assignment of executory contracts to the Stalking Horse Bidder, and lack of adequate assurance from the Stalking Horse Bidder (collectively, the "Sale Objections") is the later of **December 6, 2019 at 4:00 pm.** (prevailing Eastern Time) and seven days from service of adequate assurance information (the "Sale Objection Deadline").

3. **Auction.** In the event that the Debtors timely receive a Qualified Bid in addition to the Qualified Bid of a Stalking Horse Bidder (if any) and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction for the Assets. The Auction shall be open to (i) Qualified Bidders, (ii) the Consultation Parties, and (iii) the members of the Committee, and with respect to (i) through (iii), each of their respective legal and financial advisors shall be entitled to attend the Auction. The Auction, if one is held, will commence on **December 9, 2019 at 9:00 a.m.** (prevailing Eastern Time) at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or such later date and time as selected by the Debtors, who shall notify all Qualified Bidders.

4. **Time for Debtors to Provide Notice of Results of Auction**. As soon as reasonably practicable after the close of the Auction, and in any case no later than 4:00 p.m. (prevailing Eastern Time) on December 10, 2019, the Debtors shall (a) file the Notice of Auction Results with the Court (which notice shall identify the Winning Bidder, the amount of the Winning Bid, the Back-Up Bidder, and the amount of the Back-Up Bid(s), and include the list of assumed Executory Contracts submitted with the Winning Bidder's Qualified Bid), (b) cause the Notice of Auction Results to be published on the Case Information Website under the Sale Tab, and (c) serve the Notice of Auction Results by email, fax, or (if neither is available), overnight mail to all counterparties to Assumed Contracts.

5. **Objections to Adequate Assurance if the Winning Bidder is not the Stalking Horse Bidder.** Objections of any Potential Assumption Counterparty related solely to the adequate assurance of future performance provided by the Winning Bidder, if the Winning Bidder is not the Stalking Horse Bidder (any such objection, an "Adequate

---

[3] The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

{1258.001-W0058293.4}

<u>Assurance Objection</u>"), must be made no later than **December 11, 2019, at 5:00 p.m.** (prevailing Eastern Time) (the "<u>Adequate Assurance Objection Deadline</u>").[4]

6. **Sale Hearing**. A hearing (the "<u>Sale Hearing</u>") to consider the proposed Sale will be held before the Court on **December 12, 2019 at 9:00 a.m.** (prevailing Eastern Time), or such other date as determined by the Court, at 824 North Market Street, Wilmington, Delaware 19801.

## **Filing Assumption and Assignment Objections**

Objections to Cure Claims must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Claim that the Potential Assumption Counterparty believes is required to cure defaults under the relevant Assumed Contract, and (d) be filed with the Clerk of the Bankruptcy Court, 824 N. Market St., Wilmington, Delaware 19801, by no later than **December 3, 2019, at 4:00 p.m.** (prevailing Eastern Time), and (e) served on the Objection Notice Parties (defined below).

Pursuant to the Assumption and Assignment Procedures, objections to the proposed assumption and assignment of an Assumed Contract  or adequate assurance of any Stalking Horse Bidder's future ability to perform (an "<u>Assumption and Assignment Objection</u>"), must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy Rules, (c) state, with specificity, the legal and factual bases thereof, (d) be filed with the Clerk of the Bankruptcy Court, 824 N. Market St., Wilmington, Delaware 19801, by no later than the later of **December 6, 2019, at 4:00 p.m.** (prevailing Eastern Time) and seven days from service of adequate assurance information, and (e) be served on that same date on (i) proposed counsel for the Debtors, (y) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Christopher T. Greco, Rebecca Blake Chaikin, and Allyson Smith Weinhouse and (z) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Adam G. Landis and Kerri K. Mumford, (2) proposed counsel to the Official Committee of Unsecured Creditors (y) Cooley LLP, 55 Hudson Yards, New York, NY 10001-2157, Attn: Seth Van Aalten, Cathy Herschopf and Michael Klein and (z) Cole Schotz P.C., 500 Delaware Ave, Suite 1410, Wilmington, DE 19801, Attn: David Dean, (3) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Timothy J. Fox, (4) co-counsel to Wells Fargo Bank, National Association, (y) Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq. and (z) Richards, Layton & Finger, PA, One Rodney Square, 920 King Street, Wilmington, DE 19801, Attn: John Knight, Esq., and (5) co-counsel for Pathlight Capital LLC, (y) Riemer & Braunstein LLP, Times Square Tower, Seven Times Square, Suite 2506, New York, NY 10036, Attn: Steven E. Fox, Esq. and (z) Ashby & Geddes, P.A., 500 Delaware Avenue, Wilmington, DE 19899, Attn: Gregory A. Taylor, Esq (collectively, the "<u>Objection Notice Parties</u>").

Sale Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and

---

[4] If the Stalking Horse Bidder is the Winning Bidder, objections to adequate assurance must be filed by the Sale Objection Deadline.

{1258.001-W0058293.4}

factual bases thereof, (c) be filed with the Court by no later than **December 6, 2019, at 4 p.m.** (prevailing Eastern Time) and (d) be served on the Objection Notice Parties.

Objections of any Potential Assumption Counterparty related solely to the adequate assurance of future performance provided by the Winning Bidder, if the Winning Bidder is not the Stalking Horse Bidder (any such objection, an "Adequate Assurance Objection"), must be made no later than **December 11, 2019, at 5:00 p.m.** (prevailing Eastern Time) (the "Adequate Assurance Objection Deadline").[5]

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

*Absent order of the Court to the contrary, any Potential Assumption Counterparty to an Assumed Contract who fails to timely make an objection to the proposed assumption and assignment of such contract or lease on or before the Assumption and Assignment Objection Deadline in accordance with the Assumption and Assignment Procedures, the Bidding Procedures Order and this Notice shall be deemed to have consented to the Cure Claims set forth in this Potential Assumption and Assignment Notice and forever barred from asserting any objection or claims against the Debtors, the Winning Bidder(s), or the property of any such parties, relating to the assumption and assignment of such contract or lease, including asserting additional Cure Claims with respect to such contract or lease. Notwithstanding anything to the contrary in such contract or lease, or any other document, the Cure Claims set forth in this Potential Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Assumed Contract under section 365(b) of the Bankruptcy Code arising out of or related to any events occurring prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise.*

*[Remainder of This Page Intentionally Left Blank]*

---

[5] If the Stalking Horse Bidder is the Winning Bidder, objections to adequate assurance must be filed by the Sale Objection Deadline.

{1258.001-W0058293.4}

Dated: _____, 2019          /s/ _____
Wilmington, Delaware          **LANDIS RATH & COBB LLP**
                              Adam G. Landis (DE Bar No. 3407)
                              Kerri K. Mumford (DE Bar No. 4186)
                              Jennifer L. Cree (DE Bar No. 5919)
                              919 North Market Street, Suite 1800
                              Wilmington, Delaware 19801
                              Telephone:    (302) 467-4400
                              Facsimile:    (302) 467-4450
                              Email:        landis@lrclaw.com
                                            mumford@lrclaw.com
                                            cree@lrclaw.com

                              - and -

                              **KIRKLAND & ELLIS LLP**
                              **KIRKLAND & ELLIS INTERNATIONAL LLP**
                              Christopher T. Greco, P.C. (*pro hac vice*)
                              601 Lexington Avenue
                              New York, New York 10022
                              Telephone:    (212) 446-4800
                              Facsimile:    (212) 446-4900
                              Email:        christopher.greco@kirkland.com

                              *Proposed Co-Counsel to the Debtors and Debtors in Possession*

{1258.001-W0058293.4}

6