## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DESTINATION MATERNITY | ) | Case No. 19-12256 (BLS) |
| CORPORATION, *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Hearing Date: December 12, 2019, 9:00 a.m.** |
| | ) | **Objection Deadline: December 6, 2019, 4:00 p.m.** |

**DEBTORS' MOTION FOR ENTRY
OF AN ORDER (I) APPROVING THE
FORM APA, (II) AUTHORIZING THE SALE OF
ASSETS OUTSIDE THE ORDINARY COURSE OF BUSINESS
THROUGH THE WINNING BID, (III) AUTHORIZING THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (IV) AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (V) GRANTING RELATED RELIEF**

Destination Maternity Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), state the following in support of this motion (this "Sale Motion"):

### Relief Requested

1.    The Debtors seek entry of an order (the "Sale Order") (i) approving the form of APA; (ii) authorizing the sale of assets outside the ordinary course of business pursuant to the Winning Bid(s); (iii) authorizing the sale of assets free and clear of all liens, claims, encumbrances, and other interests to the extent set forth in the Winning Bid(s); (iv) authorizing

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Destination Maternity Corporation (5573); DM Urban Renewal, LLC (N/A); and Mothers Work Canada, Inc. (4780).  The location of the Debtors' principal place of business is 232 Strawbridge Drive, Moorestown, New Jersey 08057.

the assumption and assignment of certain executory contracts and unexpired leases; and (v) granting related relief.

2.    The Debtors reserve the right to file and serve before the Sale Hearing any supplemental pleading or declaration that the Debtors deem appropriate or necessary, including any pleading summarizing the sale process and the results thereof, in support of their request for entry of the Sale Order.

## **Preliminary Statement**

3.    The Debtors believe that pursuing a comprehensive sale transaction is the best opportunity to maximize value for the benefit of all their stakeholders.  As detailed in the First Day Declaration and the Augustine Declaration,[2] with the backing of their secured lenders, the Debtors' investment bank, Greenhill & Co., LLC ("Greenhill"), launched a robust, but accelerated, marketing process in early September.  The Debtors now seek Court authority to consummate a sale Transaction that will set the Debtors on the path to expeditiously concluding these chapter 11 proceedings.

4.    In connection with the Debtors' goal of maximizing value for all stakeholders, and pursuant to the Debtors' authority under the Bid Procedures and Bid Procedures Order, the Debtors are considering the selection of a Stalking Horse Bidder and will seek any necessary Court approval upon such selection.  Greenhill is currently in discussions with multiple parties interested in becoming a Stalking Horse Bidder (in addition to a number of other parties that have expressed intent to submit Bids by the Bid Deadline).

---

[2]    The *Declaration of Neil A. Augustine in Support of the Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [D.I. 35] filed on October 21, 2019 (the "Augustine Declaration").

5.       Consistent with the Bid Procedures Order, the Transaction, approval of which is sought by this Sale Motion, will be with the Winning Bidder(s) either following the Bid Deadline or at the Auction (if any) as contemplated by the Bid Procedures and in accordance with the Bid Procedures Order.  Time is of the essence.  Under the Debtors' Interim Cash Collateral Order,[3] the Debtors must close the Transaction and pay off all obligations owed to their prepetition secured lenders by December 31, 2019.  Failure to satisfy this milestone would give rise to termination rights, which permit the prepetition secured lenders to exercise remedies that would debilitate and imperil the Debtors' efforts to reorganize.  Failure to approve the Transaction will therefore imperil the Debtors' prospects of a successful sale of their assets, whereas approval of the Transaction would maximize the estate's value.

### Jurisdiction and Venue

6.       The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Sale Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[3]       The *Interim Order (I) Authorizing Use Of Cash Collateral And Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling A Final Hearing; And (IV) Granting Related Relief*, entered October 22, 2019 [D.I. 77] (the "Interim Cash Collateral Order").

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are sections 105(a), 363, 365, 503, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006(a), and 9014, and Local Rules 2002-1, 6004-1, and 9006-1.

9.      On October 21, 2019 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  A detailed description surrounding the facts and circumstances of these chapter 11 cases is set forth in the *Declaration of Lisa Gavales, Chair of the Office of the CEO of Destination Maternity Corporation, in Support of Chapter 11 Petitions and First Day Motions* [D.I. 17] (the "First Day Declaration"), incorporated by reference herein.

10.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in these chapter 11 cases.  On November 1, 2019, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [D.I. 139].

### Marketing Efforts and Bid Procedures

11.      The Debtors have embarked on an extensive prepetition marketing effort to maximize the value of their assets.  On August 19, 2019, Greenhill was engaged as the Debtors' investment banker and, since then, Greenhill has conducted the Debtors' sale process. Augustine Decl., ¶7.  Beginning on September 2, 2019, Greenhill began contacting potential buyers. *Id* ¶8. To date, Greenhill has contacted over 180 potential buyers, with more than 50 executing confidentiality agreements.

12.     There have been a number of indications of interest and the Debtors have conducted 7 management presentations. Currently, there are at least 21 active potential buyers conducting due diligence.

13.     On November 14, 2019, the Court entered the *Order (I) Approving the Bidding Procedures, (II) Scheduling the Bid Deadlines and Auction, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting Related Relief* [D.I. 253] (the "Bid Procedures Order").[4]

14.     In connection with the Bid Procedures Order, the Debtors filed and served the Sale Notice [D.I. 254] on November 14, 2019. The Sale Notice was also published in the *New York Times*. *See Proof of Publication of Alice Weber of Notice of Sale, Bidding Procedures, Auction and Sale Hearing* [D.I. 265]

15.     On November 19, 2019, consistent with the Bid Procedures Order, the Debtors filed and served the Potential Assumption and Assignment Notice [D.I. 267] (the "Contract Notice").

**Terms of the Form Asset Purchase Agreement**

16.     In accordance with the Bid Procedures, the Debtors prepared a proposed form of asset purchase agreement (the "Form APA") for the contemplated Transaction, which the Debtors have made available to potential bidders in their electronic data room. A copy of the Form APA, without exhibits or schedules, is attached hereto as **Exhibit A**. The following chart summarizes the principal terms of the Form APA and certain known information required for disclosure pursuant to Local Rule 6004-1. To the extent any required information is not yet

---

[4]     Capitalized terms not herein defined shall have the meaning ascribed to them in the Bid Procedures Order.

known or if the Winning Bid(s)[5] materially changes any such required information, the Debtors

will make further disclosure to the Court at or prior to the Sale Hearing.[6]

| Agreement Provision | Summary Description |
|---|---|
| Sale to Insider<br><br>Local Bankr. R. 6004-1(b)(iv)(A) | The Debtors do not anticipate that the buyer will be an insider. |
| Purchase Price | The purchase price shall be comprised of certain Assumed Liabilities and a cash payment. |
| Assets | All or substantially all assets of the Debtors. |
| Assumed Liabilities | The Assumed Liabilities listed in Section 1.3 of the Form APA, including:<br><br>(a)  all Liabilities and obligations of the Sellers under the Assigned Contracts that become due from and after the Closing;<br><br>(b)  all cure costs required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Assigned Contracts;<br><br>(c)  all Liabilities arising out of the conduct of the business or the ownership of the Acquired Assets, in each case, by Purchaser from and after the Closing Date;<br><br>(d)  all Liabilities related to, resulting from or arising out of, prior to, on or after the Closing, any (i) unredeemed refund amounts, gift cards, gift certificates, coupons or similar items, (ii) product returns, (iii) layaways and similar customer deposits, or (iv) customer promotions and loyalty programs; and<br><br>(e)  all Liabilities set forth on the schedules to the Winning Bidder's asset purchase agreement(s). |
| Assigned Contracts | The Assigned Contracts identified in the Winning Bid(s). |
| Excluded Assets | The Excluded Assets listed in Section 1.2 of the Form APA, including:<br><br>(a)  any assets expressly excluded from the definition of Acquired Assets;<br><br>(b)  all Cash and Cash Equivalents, all bank accounts, and all deposits (including maintenance deposits, customer deposits, and security deposits for rent, electricity, telephone or otherwise) or prepaid or deferred charges and |

---

[5]    The Bid Procedures provide that the Debtors can hold multiple Auctions and select multiple Winning Bidders, if necessary, each for the sale of a subset of the Assets.  Accordingly, at the Sale Hearing, the Debtors may seek approval of more than one asset purchase agreement if there are multiple Winning Bidders.

[6]    This summary is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Form APA, the Form APA shall govern in all respects.  Capitalized terms used in the following summary shall have the meanings ascribed to them in the Form APA.

expenses, including all lease and rental payments, that have been prepaid by any Seller, and any retainers or similar amounts paid to Advisors or other professional service providers;

(c)   all Contracts of the Sellers listed on the schedules to the Winning Bidder's asset purchase agreement(s);

(d)   all Documents (i) to the extent they relate to any of the Excluded Assets or Excluded Liabilities; (ii) that are the Sellers' financial accounting Documents, corporate charter, minute and stock record books, Tax Returns (and any related work papers), corporate seal, checkbooks, and canceled checks; (iii) that any Seller is required by Law or any of any Seller's applicable privacy policies or contractual restrictions to retain; or (iv) that are governed under GDPR or collected from natural persons with addresses in the European Union or European Economic Area; provided that, to the extent not prohibited by applicable Law or any of any Seller's applicable privacy policies or contractual restrictions, Purchaser shall have the right to make copies of any portions of such Documents;

(e)   all Documents prepared or received by any Seller or any of its Affiliates in connection with the sale of the Acquired Assets, this Agreement, or the transactions contemplated hereby, including (i) all analyses relating to the Acquired Assets or Purchaser so prepared or received, (ii) all bids and expressions of interest received from third parties with respect to the acquisition of any of Sellers' businesses or assets; and (iii) all privileged materials, documents and records of a Seller or any of its Affiliates, including any privileged materials, documents and records that are in the possession of any Non-Debtor Subsidiary;

(f)   all current and prior insurance policies of any of the Sellers that are not Assumed Benefit Plans, including for the avoidance or doubt all director and officer insurance policies, and all rights and benefits of any nature of the Sellers with respect thereto, including all insurance recoveries thereunder and rights to assert claims with respect to any such insurance recoveries;

(g)   all membership interests or other equity interests of any Seller or any of their respective Subsidiaries (excluding the Non-Debtor Subsidiaries) or securities convertible into, exchangeable, or exercisable for any such membership interests or other equity interests;

(h)   all Seller Plans, other than the Assumed Benefit Plans, and any right, title or interest in any of the assets thereof or relating thereto;

(i)   (i) all preference or avoidance claims or actions arising under the Bankruptcy Code or applicable Law, (ii) all other rights, claims, causes of action, rights of recovery, rights of set-off, and rights of recoupment as of the Closing of any Seller, in each case, arising out of or relating to events occurring on or prior to the Closing Date, and (iii) all claims that any of the Sellers may have against any Person with respect to any other Excluded Assets or any Excluded Liabilities;

(j)   the Sellers' rights under this Agreement, including the Purchase Price hereunder, or any agreement, certificate, instrument, or other document executed and delivered between any Seller and Purchaser in connection with the transactions contemplated hereby, or any other agreement between any

|  | Seller and Purchaser entered into on or after the date hereof; |
|---|---|
|  | (k) all Tax refunds and Tax attributes that are not transferred by the operation of applicable Tax Law; |
|  | (l) all real estate and all interests in real estate other than the Acquired Leased Real Property, including any Leasehold Improvements thereon; |
|  | (m) all information that is governed by GDPR or collected from natural persons with an address in the European Union or European Economic Area; |
|  | (n) all royalties and proceeds in connection with all Intellectual Property with respect to the period prior to the Closing, and all rights to collect the same; |
|  | (o) all demands, allowances, refunds, rebates (including any vendor or supplier rebates), rights (including under or with respect to express or implied guarantees, warranties, representations, covenants and indemnities), claims, counterclaims, defenses, credits, causes of action, rights of set off, rights of recovery or rights of recoupment relating to or arising against suppliers, vendors, merchants, manufacturers and counterparties to leases, licenses or any Contract, arising out of or relating to events occurring on or prior to the Closing Date; and |
|  | (p) the properties and assets set forth on the schedules to the Winning Bidder's asset purchase agreement(s). |
| **Excluded Liabilities** | As described in Section 1.4 of the Form APA, Purchaser shall not assume, be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any Liabilities of Sellers or relating to the Acquired Assets, whether existing on the Closing Date or arising thereafter as a result of any act, omission or circumstances taking place prior to the Closing, other than the Assumed Liabilities. |
| **Representations and Warranties** **(Art. III & IX)** | Customary representations and warranties by Purchaser and Seller. |
| **Agreements with Management** **Local Bankr. R. 6004-1(b)(iv)(B)** | The Debtors are not aware of any agreements between a buyer and management at this time. |
| **Releases** **Local Bankr. R. 6004-1(b)(iv)(C)** | None. |
| **Private Sale/No Competitive Bidding** **Local Bankr. R. 6004-1(b)(iv)(D)** | No. The Debtors are pursuing an open Auction and sale process. |
| **Closing and Other Deadlines** **Local Bankr. R. 6004-1(b)(iv)(E)** | Section 8.1(c) of the Form APA provides that either Purchaser or the Company may terminate the Form APA by written notice if the Closing shall not have occurred on or before such date as agreed to by the Debtors and the Winning Bidder(s). |
| **Good Faith Deposit** **Local Bankr. R. 6004-** | An amount in cash equal to 10% of the Cash Payment. |

| (b)(iv)(F) | |
|---|---|
| **Interim Arrangements with Proposed Buyer** Local Bankr. R. 6004-(b)(iv)(G) | Currently, there are no interim arrangements with any proposed buyer. |
| **Use of Proceeds** Local Bankr. R. 6004-1(b)(iv)(H) | Pursuant to the Interim Cash Collateral Order and the Sale Order, the Debtors will distribute the Sale Proceeds to their secured lenders. |
| **Records Retention** Local Bankr. R. 6004-(b)(iv)(J) | Section 6.2(c) of the Form APA provides that for a period of three years following the Closing Date, the Debtors and their advisors shall have reasonable access to the books and records relating to the assets sold to the buyer. |
| **Tax Exemption,** Local Bankr. R. 6004(b)(iv)i) | Section 10.18 of the Form APA provides that the purchaser waives compliance by the Debtors with the requirements of any "bulk transfer" laws of any jurisdiction that may otherwise be applicable with respect to the sale and transfer of the assets. |
| **Sale of Avoidance Actions** Local Bankr. R. 6004-(b)(iv)(K) | Avoidance actions are expressly listed as Excluded Assets under Section 1.2 of the Form APA. |
| **Requested Findings as to Successor Liability** Local Bankr. R. 6004-1(b)(iv)(L) | The Acquired Assets and Assumed Liabilities shall be sold free and clear of all liens, interests, and other encumbrances (other than Permitted Encumbrances), including successor liability. *See* Form APA, Section 1.1; *see also* Sale Order ¶ 24. |
| **Sale Free and Clear of Unexpired Leases** Local Bankr. R. 6004-1(b)(iv)(M) | The Transaction is to be free and clear of all liens and unassumed liabilities, including leasehold interests, license or other right.  Sale Order ¶ M. |
| **Credit Bid** Local Bankr. R. 6004-1(b)(iv)(N) | The Bid Procedures permit any Qualified Bidder who has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Creditor") to submit a credit bid for all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured. |
| **Relief from Bankruptcy Rule 6004(h)** Local Bankr. R. 6004-1(b)(iv)(O) | The Debtors have requested a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). |

17.    In further compliance with Local Rule 6004-1, a copy of the proposed form of

Sale Order is attached hereto as **Exhibit B**.

**Basis for Relief**

I.    **The Transaction Should Be Approved as an Exercise of Sound Business Judgment.**

18.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. *See, e.g., In re Martin*, 91 F.3d 389, 395 (3d. Cir. 1996) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (same); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F. 2d 143 (3rd Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F. 2d 386, 390 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991)). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the Property; and whether the asset is decreasing or increasing in value.

124 B.R. at 176.

19.    The *Delaware & Hudson Railway* court further held that "[o]nce a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation

sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the Buyer is proceeding in good faith." *Id.*

20.    The Debtors have concluded that the Transaction is in the best interest of their chapter 11 estates, and is supported by a number of sound business reasons.

- ***First***, the Debtors believe the Transaction will maximize the Assets' value by allowing parties to bid on assets that would have substantially less value on a stand-alone basis. Moreover, if the Winning Bid(s) contemplates the assumption and assignment of certain of the Debtors' contracts and leases, it will result in payment in full for a number of the Debtors' creditors, *i.e.*, certain contract counterparties.

- ***Second***, the Debtors believe that, as a result of the marketing efforts that have been undertaken and that they will continue to undertake, the highest or best offer obtained through the approved Bid Procedures and Auction will provide maximum value to the Debtors under the current circumstances. The Debtors, with the assistance of Greenhill, have already extensively marketed the Assets and have designed the Bid Procedures to maximize the purchase price that will be realized from the sale of the Assets.

- ***Third***, the sale of the Assets is subject to a competitive process, enhancing the Debtors' ability to receive the highest or otherwise best value for the Assets. Consequently, the Winning Bid(s) will have been subject to a "market check" in the form of the Auction, will constitute, in the Debtors' reasonable business judgment, the highest or otherwise best offer for the Assets, and will be the best means for establishing whether a fair and reasonable price is being paid. *See, e.g.*, *In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326 at *4 (Bankr. D. Del. 2001) (although a "section 363(b) sale transaction does not require an auction procedure," "[t]he auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

21.    Thus, the Debtors submit that the Winning Bid(s) will constitute the highest or otherwise best offer for the Assets and will allow the Debtors the greatest chance of preserving any going concern value for their estates. As such, the Debtors' determination to sell the Assets through an Auction process and subsequently to enter into the Winning Bid(s) will be a valid and

sound exercise of the Debtors' business judgment.  The Debtors will be prepared to submit evidence at the hearing to approve the Transaction to support these conclusions.

22.    Therefore, the Debtors request that the Court make a finding that the sale of the Assets to the Winning Bidder(s) is a proper exercise of the Debtors' business judgment and is rightly authorized.

### A.    The Sale and Purchase Price Reflects a Fair Value Transaction.

23.    It is well-settled that, where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market.  *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also Trans World*, 2001 WL 1820326 at *4.  As noted above, the Debtors, with Greenhill's assistance, have marketed the Assets since well before the Petition Date, and have continued to do so during these chapter 11 cases in accordance with the Bid Procedures.  Among other things, the Debtors have contacted previously solicited and new parties, continued to provide potential bidders with data room access and requested information, hosted meetings and presentations with the Debtors' management team, held numerous conference calls with potential bidders, considered alternative transaction structures, and otherwise taken all appropriate efforts to increase transaction value.  In this way, the number of bidders that are eligible to participate in a competitive Auction process will be maximized.

### B.    The Sale Has Been Proposed in Good Faith and Without Collusion.

24.    The Debtors request that the Court find that the Winning Bidder(s) arising from the Auction, if any, is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Assets.

25.     Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

26.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the Transaction is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." Although the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good-faith finding may not be made. *See, e.g., In re Abbotts Dairies*, 788 F.2d at 147 ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

27.     The Debtors intend to establish at the Sale Hearing that the Winning Bid(s) was a negotiated, arm's-length transaction, in which the Winning Bidder(s) acted in good faith, without collusion or fraud of any kind, and in compliance with the *Abbotts Dairies* standards.[7]  The

---

[7]    The Debtors believe that a finding of good faith within the meaning of section 363(m) of the Bankruptcy Code will be appropriate for any Winning Bidder arising from the Auction. Pursuant to the Bid Procedures, any Winning Bidder will have had to present a proposal in accordance with the Bid Procedures. In addition, the Debtors will not choose as the Winning Bidder(s) or Backup Bidder(s) (as defined in the Bid Procedures) any

Debtors expect that the Winning Bidder(s) will not be an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code.  The evidence at the Sale Hearing will further establish that neither the Debtors nor the Winning Bidder(s) have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code with respect to the consummation of the sale transaction or the transfer of the Assets and the Contracts to the Winning Bidder(s).

28.     Thus, the Debtors request that the Court find that the Winning Bidder(s) has purchased the Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code, is entitled to the protections of section 363(m) of the Bankruptcy Code, and is entitled to a finding that the Agreement and Transaction cannot be avoided under section 363(n) of the Bankruptcy Code.

### C.     The Transaction Should be Approved "Free and Clear" Under Section 363(f).

29.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if:  (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

30.     Section 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtors' sale of the Assets free and clear of all interests (*i.e.*, all liens, claims, rights, interests, charges, or encumbrances), except

---

entity whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted, and will be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.

with respect to any interests that may be Assumed Liabilities under the Winning Bid(s). *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

31.    The Debtors submit that any interest that will not be an Assumed Liability satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the sale, subject to any claims and defenses the Debtors may possess with respect thereto.    The Debtors accordingly request authority to convey the Assets to the Winning Bidder(s) arising from the Auction, if any, free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds of the sale.

## II.    The Assumption and Assignment of the Executory Contracts Should Be Approved.

32.    To facilitate and effectuate the sale of the Assets and enhance the value to the Debtors' estate, the Debtors are requesting approval of the assumption and assignment of the contracts and leases (and any modifications thereto) identified in the Contract Notice (the "Contracts")[8] to the Winning Bidder(s) upon the closing of the Transactions contemplated under the Winning Bid(s) and payment of the cure costs (the "Cure Costs") reflected in the Contract Notice or as otherwise agreed to by the parties or Court order.    The Cure Costs are the amounts, if any, that the Debtors believe are approximately owed to each counterparty (each a "Contract

---

[8]    The Contract Notice identifies Contracts that could potentially be assumed and assigned to the Winning Bidder(s) under the Winning Bid(s).    The Winning Bid(s) will designate Contracts or leases as assumed Contracts.    Accordingly, the list of Contracts assumed by the Winning Bid(s) may materially differ from the list in the Contract Notice.    In accordance with the Bid Procedures, the Debtors will serve notice of the identity of the Winning Bidder(s) to all Contract Counterparties, and such Contract Counterparties will therefore have an opportunity to object to both the proposed Cure Cost and the assumption and assignment of the executory Contract or unexpired lease.    The inclusion of a Contract on the Contract Notice does not constitute an admission as to the executory or non-executory nature of the contract, or as to the existence or validity of any claims held by the Contract Counterparty or Contract Counterparties to such contract.

Counterparty," and collectively, the "Contract Counterparties") to an executory Contract to cure any defaults that exist under such contract or lease.

> **A.    The Assumption and Assignment of the Contracts Reflects the Debtors' Reasonable Business Judgment.**

33.    Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign the debtor's executory contracts and unexpired leases, subject to court approval, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  Although section 365 of the Bankruptcy Code does not set forth standards for courts to apply in determining whether to approve a debtor's decision to assume and/or assign an executory contract or unexpired lease, courts have consistently applied a "business judgment" test when reviewing such a decision unless such decision is clearly an unreasonable exercise of such judgment.  *See, e.g.*, *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523 (1943) (applying Bankruptcy Act section 77(b), predecessor to Bankruptcy Code section 365, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989) (describing deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume executory contracts under the Code."); *In re Network Access Solutions, Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule."); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard.").

34.    Here, the Court should approve the decision to assume and assign the Contracts in connection with a Transaction as a sound exercise of the Debtors' business judgment.  ***First***, the

Contracts are important to the operation of the Debtors' business and, as such, are critical to inducing the best offer for the Assets. *Second*, it is unlikely that any purchaser would want to acquire the Assets unless a significant number of the Contracts needed to manage the day-to-day operations were included in the Transaction. *Third*, the assumption and assignment of the Contracts is integral to, and inextricably integrated in, the sale. *Finally*, the Contracts will be assumed and assigned as part of the marketing and sale process being conducted by the Debtors, and therefore will be reviewed by key constituents in these chapter 11 cases.

35.    Accordingly, the Debtors submit that the assumption and assignment of the Contracts should be approved as an exercise of their business judgment.

**B.    Defaults, if any, Under the Contracts Will Be Cured Through the Sale.**

36.    Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code, specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c) provide adequate assurance of future performance thereunder. This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain." *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

37.    The Debtors submit that the statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be promptly satisfied because the Form APA requires that the purchaser cure all defaults associated with, or that are required to properly assume, the Contracts. *See*

Form APA §1.3(b). Moreover, the Contract Counterparties have been provided notice of the proposed Cure Costs, and have sufficient opportunity to file an objection to the proposed Cure Costs. To the extent no objection is timely filed with regard to a particular cure amount, such cure amount shall be binding on the applicable contract or lease counterparty. The payment of the Cure Costs will be in full and final satisfaction of all obligations to cure defaults and compensate the Contract Counterparties for any pecuniary losses under such contracts or leases pursuant to section 365(b)(1) of the Bankruptcy Code, unless the Debtors determine that a particular contract is not truly executory, and does not need to be cured to transfer the Assets to the Winning Bidder(s).

> **C.**     **Non-Debtor Counterparties Will Be Adequately Assured of Future Performance.**

38.     Similarly, the Debtors submit that the requirement of section 365(f)(2)(B) of the Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts and circumstances present here. "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case." *In re U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982). Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance." *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605−06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

39.     The Debtors believe that they can and will demonstrate that the requirements for assumption and assignment of the Executory Contracts to the Winning Bidder(s) arising from the Auction, if any, will be satisfied.  As required by the Bid Procedures, the Debtors will evaluate the financial wherewithal of potential bidders before designating such party a Qualified Bidder and will demonstrate such financial wherewithal, willingness, and ability to perform under the Executory Contracts assigned to the Winning Bidder(s).  Each Bid must contain evidence that the Qualified Bidder has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) of the Bankruptcy Code, and specifically with respect to real estate leases, will include: (i) the exact name of the entity that will be designated as the proposed assignee of the leases; (ii) audited or if not available, non-audited, financial statements, and any supplemental schedules for the calendar years ended 2017 and 2018 for the proposed assignee and any proposed guarantor, (iii) any documents regarding the proposed assignee's and any guarantor's experience in operating retail stores, (iv) the number of retail stores the proposed assignee and any guarantor operates and the trade names used; and (v) any additional evidence of financial wherewithal, including cash available and any debt or equity commitments or other forms of liquidity post-closing.  Such evidence may also include audited and unaudited financial statements, tax returns, bank account statements, a description of the proposed business to be conducted at the premises and/or any other documentation that the Debtors further request.[9] Therefore, the Debtors submit that the Winning Bidder(s) will satisfy the statutory requirements of section 365(f)(2)(B) of the Bankruptcy Code.

---

[9]  This requirement shall not apply to an Acceptable Bidder who is a non-Debtor counterparty that is credit bidding solely for its own lease.

III.    **Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.**

40.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  The Debtors request that the Sale Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

41.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure." 10 *Collier on Bankruptcy* ¶ 6004.11 (16th rev. ed. 2009).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. *Id.*

42.    To maximize the value received for the Assets, the Debtors seek to close the Transaction as soon as possible after the Sale Hearing.  Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

### Notice

43.    The Debtors have provided notice of this Sale Motion to:  (a) the U.S. Trustee; (b) counsel to the Committee; (d) Wells Fargo Bank, N.A., as administrative agent and lender

under the Debtors' prepetition revolving credit facility and lender under the Debtors' prepetition term loan facility or, in lieu thereof, counsel thereto; (e) Pathlight Capital LLC, as administrative agent and lender under the Debtors' prepetition term loan facility or, in lieu thereof, thereto (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the office of the attorneys general for the states in which the Debtors operate; (j) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

44.    No prior request for the relief sought in this Sale Motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Sale Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: November 21, 2019
Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Adam G. Landis (DE Bar No. 3407)
Kerri K. Mumford (DE Bar No. 4186)
Jennifer L. Cree (DE Bar No. 5919)
919 North Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:     (302) 467-4400
Facsimile:     (302) 467-4450
Email:          landis@lrclaw.com
                  mumford@lrclaw.com
                  cree@lrclaw.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher T. Greco, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          christopher.greco@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

{1258.002-W0058929.}